# EXHIBIT A

LAW OFFICES OF

# ANDREW L. PACKARD

245 KENTUCKY STREET, SUITE B3, PETALUMA, CA 94952
PHONE (707) 782-4060   FAX (707) 782-4062
INFO@PACKARDLAWOFFICES.COM

November 14, 2017

**VIA CERTIFIED MAIL**

Mark D. Soiland, Chief Executive Officer
Soiland Co., Inc.
7171 Stony Point Road
Cotati, CA 94931

Marlene K. Soiland, Secretary, Chief Financial
Officer, and Agent for Service of Process
Soiland Co., Inc.
7171 Stony Point Road
Cotati, CA 94931

Re:   **NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
(33 U.S.C. §§ 1251 *et seq.*)**

Dear Mark and Marlene Soiland:

This firm represents California Sportfishing Protection Alliance ("CSPA") in regard to violations of the Clean Water Act ("the Act") occurring at Stony Point Rock Quarry's ("SPRQ") aggregate and soil processing facility located at 7171 Stony Point Road, in Cotati, California (the "Facility"). This letter is being sent to you as the responsible owners, officers and/or operators of the Facility, or as the registered agent for this entity. Unless otherwise noted, Mark Soiland, Marlene Soiland, Soiland Co., Inc. and Stony Point Rock Quarry shall hereinafter be collectively referred to as "SPRQ." The purpose of this letter is to provide SPRQ with notice of the violations of the Industrial General Permit occurring at the Facility, including, but not limited to, discharges of polluted storm water associated with industrial activities from the Facility into local surface waters.

SPRQ is in ongoing violation of the substantive and procedural requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 14-57-DWQ ("General Permit" or "Permit").[1] Prior to July 1, 2015, SPRQ's storm water discharges were regulated under Water Quality Order No. 91-13-DWQ, as amended by Water Quality Orders 92-12-DWQ and 97-03-DWQ.

On July 1, 2015 the 2015 General Permit went into effect, superseding the 1997 General Permit that was operative between 1997 and June 30, 2015. The 2015 General Permit includes many of the same fundamental requirements and implements many of the same statutory

---

[1] SPRQ submitted a Notice of Intent (NOI) to comply with the General Permit for the Cotati Facility on or about June 8, 2015.

Notice of Violation and Intent To File Suit
November 14, 2017
Page 2

requirements as the 1997 General Permit.  Violation of both the 1997 and 2015 General Permit provisions is enforceable under the law.  General Permit, Finding A.6.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects SPRQ to a penalty for all violations occurring during the period commencing five years prior to the date of the Notice Letter.  These provisions of law authorize civil penalties of up to $37,500 per day per violation for all Clean Water Act violations occurring after January 12, 2009 and $51,570 per day per violation for all violations that occurred after November 2, 2015.

In addition to civil penalties, CSPA will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law.  Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit.  Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur.  *See* 40 C.F.R. § 135.2.

As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility.  40 C.F.R. § 135.3(a).  At the expiration of sixty (60) days from the date of this letter, CSPA intends to file suit under Section 505(a) of the Act in federal court against SPRQ for violations of the Clean Water Act and the Permit.

I.      **Background.**

   A.      **California Sportfishing Protection Alliance**

CSPA is a non-profit association dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters into which SPRQ discharges polluted storm water.  Members of CSPA enjoy the waters that the Facility discharges into, including Washoe Creek, Laguna de Santa Rosa, Santa Rosa Creek, Mark West Creek and the Russian River.  Members of CSPA use and enjoy these waters for fishing, estuarine habitat and the rare, threatened and endangered species it supports, the wildlife habitat, marine habitat, and other designated beneficial uses.  The discharge of pollutants from the Facility impairs each of these uses.  Further, discharges of polluted storm water from the Facility are ongoing and continuous.  Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by SPRQ's failure to comply with the Clean Water Act and the General Permit.

   B.      **The Clean Water Act.**

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251.  The Act prohibits

Notice of Violation and Intent To File Suit
November 14, 2017
Page 3

the discharge of pollutants into United States waters except as authorized by the statute. 33 U.S.C. § 1311; *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir. 2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342. In 1987, the Act was amended to establish a framework for regulating storm water discharges through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69 (1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832, 840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean Water Act's permitting scheme). The discharge of pollutants not specifically allowed by a NPDES permit is illegal. *Ecological Rights Found. v. Pacific Lumber Co*., 230 F.3d 1141, 1145 (9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing California's intent to implement its own NPDES permit program). The CWA authorizes states with approved NPDES permit programs to regulate industrial storm water discharges through individual permits issued to dischargers and/or through the issuance of a single, statewide general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b). Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342

### C.     California's General Permit for Storm Water Discharges Associated with Industrial Activities

Between 1997 and June 30, 2015, the General Permit in effect was Order No. 97-03-DWQ, which CSPA refers to as the "1997 General Permit." On July 1, 2015, pursuant to Order No. 2015-0057-DWQ the General Permit was reissued, including many of the same fundamental terms as the prior permit. For purposes of this notice letter, CSPA refers to the reissued permit as the "2015 General Permit." Accordingly, SPRQ is liable for violations of the 1997 General Permit and ongoing violations of the 2015 General Permit, and civil penalties and injunctive relief are available remedies. *See Illinois v. Outboard Marine, Inc.*, 680 F.2d 473, 480-81 (7th Cir. 1982) (relief granted for violations of an expire permit); *Sierra Club v. Aluminum Co. of Am.*, 585 F. Supp. 842, 853-54 (N.D.N.Y. 1984) (holding that the Clean Water Act's legislative intent and public policy favor allowing penalties for violations of an expired permit); *Pub. Interest Research Group of N.J. v. Carter-Wallace, Inc.*, 684 F. Supp. 115, 121-22 (D.N.J. 1988) ("Limitations of an expired permit, when those limitations have been transferred unchanged to the newly issued permit, may be viewed as currently in effect").

Facilities discharging, or having the potential to discharge, storm water associated with industrial activities that have not obtained an individual NPDES permit must apply for coverage under the General Permit by filing a Notice of Intent to Comply ("NOI"). 1997 General Permit, Provision E.1; 2015 General Permit, Standard Condition XXI.A. Facilities must file their NOIs before the initiation of industrial operations. *Id.*

Facilities must strictly comply with all of the terms and conditions of the General Permit. A violation of the General Permit is a violation of the CWA.

The General Permit contains three primary and interrelated categories of requirements: (1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water

Notice of Violation and Intent To File Suit
November 14, 2017
Page 4

Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

### D.      SPRQ's Cotati Facility

Information available to CSPA indicates that SPRQ's industrial activities at the approximately 80-acre Facility include, but are not limited to: aggregate and rock material crushing, processing, stockpiling and recycling (concrete, tile, porcelain and asphalt shingles); and a landscape materials yard.  The Facility also includes an approximately 17-acre rock quarry as well as a shop, equipment fluids storage areas, and a network of dirt roads that provide connectivity between the various industrial areas.  The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Code 1442 ("Construction Sand and Gravel").

SPRQ collects and discharges storm water associated with industrial activities at the Facility through at least five (5) discharge points into Washoe Creek, which drains to Laguna de Santa Rosa, then to Santa Rosa Creek and then to Mark West Creek, before joining the Russian River.  Washoe Creek, Laguna de Santa Rosa, Santa Rosa Creek, Mark West Creek and the Russian River are waters of the United States within the meaning of the Clean Water Act.

According to the 2012 303(d) List of Impaired Water Bodies, Russian River Hydrologic Unit, Middle Russian River Hydrologic Area downstream of the Facility is impaired for: Indicator Bacteria, Nitrogen, Dissolved Oxygen, Sediment/Siltation, and Temperature.[2]  Polluted discharges from industrial sites, such as the Facility, contribute to the degradation of these already impaired surface waters and aquatic-dependent wildlife.

The areas of industrial activity at the Facility are sources of pollutants.  The General Permit requires SPRQ to analyze storm water samples for TSS, pH, and Oil and Grease.  1997 General Permit, Section B.5.c.i; 2015 General Permit, Section XI.B.6.  Facilities under SIC Code 1442 must also analyze storm water samples for Nitrate plus Nitrite Nitrogen ("N+N").  1997 General Permit, Tables 1-2; 2015 General Permit Tables 1-2.

## II.      SPRQ's Violations of the Act and Permit.

Based on its review of available public documents, CSPA is informed and believes that SPRQ is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit.  These violations are ongoing and continuous.  Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, SPRQ is subject to penalties for violations of the Act since November 14, 2012.

---

[2] 2012 Integrated Report – All Assessed Waters, *available at* http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2012.shtml (last accessed November 13, 2017).

Notice of Violation and Intent To File Suit
November 14, 2017
Page 5

    **A.**     **SPRQ Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.**

        SPRQ's storm water sampling results provide conclusive evidence of SPRQ's failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations.  Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation."  *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

        **1.**     **Applicable Water Quality Standards.**

        The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance.  1997 General Permit, Discharge Prohibition A.2; 2015 General Permit, Discharge Prohibition III.C.  The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies.  1997 General Permit, Receiving Water Limitation C.2; 2015 General Permit, Discharge Prohibition III.D.  Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water.  1997 General Permit, Receiving Water Limitations C.1, C.2; 2015 General Permit, Receiving Water Limitations VI.A, VI.B.

        Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations.  1997 General Permit, p. VII; 2015 General Permit, Special Condition XX.B.  The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards.  *Id.*

        The *Water Quality Control Plan for the North Coast Region (Revised May 2011)* ("Basin Plan") sets forth water quality standards and prohibitions applicable to SPRQ's storm water discharges.  The Basin Plan identifies present and potential beneficial uses for the Russian River Hydrologic Unit, which include municipal and domestic water supply, hydropower generation, agricultural supply, industrial service supply, navigation, wildlife habitat, warm freshwater habitat, cold freshwater habitat, warm and cold spawning, and contact and non-contact water recreation.

        **2.**     **Applicable Effluent Limitations.**

        Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic

Notice of Violation and Intent To File Suit
November 14, 2017
Page 6

and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants.  1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A.  Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform.  40 C.F.R. § 401.16.  All other pollutants are either toxic or nonconventional.  40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT.  *Santa Monica Baykeeper v. Kramer Metals,* 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); 1997 General Permit, Effluent Limitations B.5-6; 2015 General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by SPRQ: Total Suspended Solids – 100 mg/L; Oil & Grease – 15.0 mg/L; pH – 6.0-9.0 s.u. and Nitrate plus Nitrite Nitrogen – 0.68 mg/L.

### 3.      SPRQ's Storm Water Sample Results

The following discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations and effluent limitations of the Permit:

**a.      Discharge of Storm Water Containing Total Suspended Solids (TSS) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 4/7/2017 | CSP #1 | TSS | 120 | 100 |
| 4/7/2017 | CSP #3 | TSS | 210 | 100 |
| 4/7/2017 | CSP #4 | TSS | 150 | 100 |
| 3/21/2017 | CSP #5 | TSS | 130 | 100 |
| 2/17/2017 | CSP #3 | TSS | 120 | 100 |
| 2/16/2017 | CSP #5 | TSS | 120 | 100 |
| 1/18/2017 | CSP #1 | TSS | 550 | 100 |
| 1/18/2017 | CSP #2 | TSS | 110 | 100 |
| 1/18/2017 | CSP #3 | TSS | 270 | 100 |
| 1/18/2017 | CSP #4 | TSS | 210 | 100 |
| 1/18/2017 | CSP #5 | TSS | 200 | 100 |
| 10/25/2016 | CSP #3 | TSS | 200 | 100 |
| 10/25/2016 | CSP #4 | TSS | 160 | 100 |
| 10/25/2016 | CSP #5 | TSS | 120 | 100 |
| 1/29/2016 | CSP #3 | TSS | 150 | 100 |
| 1/29/2016 | CSP #4 | TSS | 180 | 100 |

Notice of Violation and Intent To File Suit
November 14, 2017
Page 7

| 1/29/2016 | CSP #5 | TSS | 120 | 100 |
|---|---|---|---|---|
| 1/5/16 | CSP #3 | TSS | 360 | 100 |
| 1/5/16 | CSP #5 | TSS | 140 | 100 |
| 12/10/2015 | CSP #2 | TSS | 1200 | 100 |
| 12/10/2015 | CSP #3 | TSS | 140 | 100 |
| 12/10/2015 | CSP #4 | TSS | 330 | 100 |

        **b.**     **Discharge of Storm Water Containing Nitrate plus Nitrite Nitrogen (N+N) at Concentrations in Excess of Applicable EPA Benchmark Values**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 4/7/2017 | CSP #3 | N+N | 0.72 | 0.68 |
| 4/7/2017 | CSP #5 | N+N | 3.7 | 0.68 |
| 3/21/2017 | CSP #3 | N+N | 1.2 | 0.68 |
| 3/21/2017 | CSP #5 | N+N | 3.6 | 0.68 |
| 2/17/2017 | CSP #3 | N+N | 1.4 | 0.68 |
| 2/16/2017 | CSP #5 | N+N | 2.6 | 0.68 |
| 2/6/2017 | CSP #1 | N+N | 0.98 | 0.68 |
| 2/6/2017 | CSP #2 | N+N | 0.71 | 0.68 |
| 2/6/2017 | CSP #5 | N+N | 1.6 | 0.68 |
| 1/18/2017 | CSP #2 | N+N | 0.83 | 0.68 |
| 1/18/2017 | CSP #5 | N+N | 3 | 0.68 |
| 12/23/2016 | CSP #5 | N+N | 3.8 | 0.68 |
| 12/8/2016 | CSP #3 | N+N | 2.9 | 0.68 |
| 12/8/2016 | CSP #5 | N+N | 2.9 | 0.68 |
| 11/23/2016 | CSP #2 | N+N | 0.92 | 0.68 |
| 11/23/2016 | CSP #5 | N+N | 2.8 | 0.68 |
| 10/25/2016 | CSP #1 | N+N | 1 | 0.68 |
| 10/25/2016 | CSP #2 | N+N | 1.2 | 0.68 |
| 10/25/2016 | CSP #3 | N+N | 1.8 | 0.68 |
| 10/25/2016 | CSP #5 | N+N | 2.1 | 0.68 |
| 2/18/16 | CSP #5 | N+N | 3.6 | 0.68 |
| 1/29/2016 | CSP #2 | N+N | 0.8 | 0.68 |
| 1/5/16 | CSP #1 | N+N | 3.9 | 0.68 |
| 1/5/16 | CSP #2 | N+N | 1.2 | 0.68 |
| 1/5/16 | CSP #4 | N+N | 0.8 | 0.68 |
| 12/21/2015 | CSP #1 | N+N | 2 | 0.68 |
| 12/21/2015 | CSP #2 | N+N | 4.4 | 0.68 |
| 12/21/2015 | CSP #4 | N+N | 0.69 | 0.68 |

Notice of Violation and Intent To File Suit
November 14, 2017
Page 8

| 12/21/2015 | CSP #5 | N+N | 3.8 | 0.68 |
|---|---|---|---|---|
| 12/10/2015 | CSP #2 | N+N | 2.2 | 0.68 |
| 12/10/2015 | CSP #6 | N+N | 1.6 | 0.68 |

    **c.**    **Discharge of Storm Water with a pH Outside EPA Benchmark and CTR Values**

| Date | Discharge Point | Parameter | Sample Result (s.u.) | EPA Benchmark Value (s.u.) | CTR Criteria (s.u.) |
|---|---|---|---|---|---|
| 3/21/2017 | CSP #3 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 3/21/2017 | CSP #4 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 3/21/2017 | CSP #5 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 3/21/2017 | CSP #6 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/17/2017 | CSP #3 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/17/2017 | CSP #4 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/17/2017 | CSP #6 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/6/2017 | CSP #3 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/6/2017 | CSP #4 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/6/2017 | CSP #6 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #1 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #2 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #3 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #4 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #5 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #6 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 12/23/2016 | CSP #1 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 12/23/2016 | CSP #2 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 12/23/2016 | CSP #5 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 12/8/2016 | CSP #1 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 12/8/2016 | CSP #5 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 11/23/2016 | CSP #2 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |

    **d**.    **SPRQ 's Sample Results Are Evidence of Violations of the General Permit**

        SPRQ's sample results demonstrate violations of the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above.  CSPA is informed and believes that SPRQ has known that its storm water contains pollutants at levels exceeding General Permit standards since at least November 14, 2012.

CSPA alleges that such violations occur each time storm water discharges from the Facility.  Attachment A hereto, sets forth the specific rain dates on which CSPA alleges that SPRQ has discharged storm water containing impermissible levels of TSS, O&G, pH, and N+N in violation of the General Permit.  1997 General Permit, Discharge Prohibition A.2, Receiving Water Limitations C.1 and C.2; 2015 General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B.

### 4.     SPRQ Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges.  1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A.  To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges.  *See* 1997 General Permit, Sections A.8.a-b; 2015 General Permit, Sections X.H.1-2.

SPRQ has failed to implement the minimum BMPs required by the General Permit, including: good housekeeping requirements; preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping. Permit, Section X.H.1(a-g).

SPRQ has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations.  1997 General Permit, Section A.8.b; 2015 General Permit, Sections X.H.2.

Each day that SPRQ  have failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a).  SPRQ have been in violation of the BAT and BCT requirements at the Facility every day since at least November 14, 2012.

### 5.     SPRQ Has Failed to Implement an Adequate Monitoring Implementation Plan.

The General Permit requires dischargers to implement a Monitoring Implementation Plan.  Permit, Section X.I.  As part of their monitoring plan, dischargers must identify all storm water discharge locations.  Permit, Section X.I.2.  Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events.  General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events

Notice of Violation and Intent To File Suit
November 14, 2017
Page 10

during the second half of each reporting year (January 1 to June 3).  General Permit, Section
XI.B.  Section XI.B requires dischargers to sample and analyze during the wet season for basic
parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain
industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants
likely to be in the storm water discharged from the facility based on the pollutant source
assessment.  Permit, Section XI.B.6.  Dischargers must submit all sampling and analytical results
via SMARTS within thirty (30) days of obtaining all results for each sampling event.  Section
XI.B.11.

SPRQ has failed to develop and implement an adequate Monitoring Implementation Plan.
Each day that SPRQ has failed to develop and implement an adequate Monitoring
Implementation Plan is a separate and distinct violation of the Act and Permit.  SPRQ has been
in violation of the Monitoring Implementation Plan requirements every day since at least
November 14, 2012.

### 6.  SPRQ Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.

The General Permit requires dischargers to develop and implement a site-specific
SWPPP.  1997 General Permit, Section A.1; 2015 General Permit, Section X.A.  The SWPPP
must include, among other elements: (1) the facility name and contact information; (2) a site
map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an
assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if
applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance
evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP
amendment, if applicable.  *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the
Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS")
their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify
and submit via SMARTS for any non-significant revisions not more than once every three (3)
months in the reporting year.  2015 General Permit, Section X.B; see also 1997 General permit,
Section A.

CSPA's investigation indicates that SPRQ has been operating with an inadequately
developed or implemented SWPPP in violation of General Permit requirements.  SPRQ has
failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting
in the Facility's numerous effluent limitation violations.

Each day SPRQ failed to develop and implement an adequate SWPPP is a violation of
the General Permit.  The SWPPP violations described above were at all times in violation of
Section A of the 1997 General Permit, and Section X of the 2015 General Permit. SPRQ has
been in violation of these requirements at the Facility every day since at least November 14,
2012.

Notice of Violation and Intent To File Suit
November 14, 2017
Page 11

### 6.     SPRQ Has Failed to File Timely, True and Correct Reports.

Section XVI. of the Permit requires dischargers to submit an Annual Report by July 15th of each reporting year to the Regional Board.  The Annual Report must be signed and certified by a discharger's Legally Responsible Person, or Duly Authorized Representative.  Permit, Sections XVI.A, XXI.K.  The Annual Report must include a compliance checklist, certifying compliance with the General Permit and an explanation of any non-compliance.  Permit, Section XVI.B.

CSPA's investigations indicate that SPRQ has submitted incomplete Annual Reports and purported to comply with the Permit despite significant noncompliance at the Facility.

### III.    Persons Responsible for the Violations.

CSPA puts SPRQ on notice that they are the persons and entities responsible for the violations described above.  If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts SPRQ on formal notice that it intends to include those persons in this action.

### IV.    Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainer Avenue
Stockton, CA 95204
(209) 464-5067

### V.    Counsel.

CSPA has retained legal counsel to represent it in this matter.  Please direct all communications to:

Andrew L. Packard
William N. Carlon
Law Offices Of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
(707) 782-4060
andrew@packardlawoffices.com

### VI.    Conclusion

Notice of Violation and Intent To File Suit
November 14, 2017
Page 12

      CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against SPRQ and their agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

_____

Andrew L. Packard
Law Offices of Andrew L. Packard
Counsel for CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

Notice of Violation and Intent To File Suit
November 14, 2017
Page 13

## SERVICE LIST

### VIA CERTIFIED MAIL

Scott Pruitt, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Alexis Strauss, Acting Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Jeff Sessions, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Matthias St. John, Executive Officer
North Coast Regional Water Quality Control Board
5550 Skylane Boulevard Suite A
Santa Rosa, CA 95403

**ATTACHMENT A**
**Notice of Intent to File Suit, SPRQ**
**Significant Rain Events,* November 14, 2012 – November 14, 2017**

| | | | |
|---|---|---|---|
| November 16, 2012 | April 8, 2013 | April 27, 2014 | April 6, 2015 |
| November 17, 2012 | May 28, 2013 | July 22, 2014 | April 25, 2015 |
| November 18, 2012 | June 10, 2013 | August 5, 2014 | May 14, 2015 |
| November 20, 2012 | June 25, 2013 | September 18, 2014 | June 1, 2015 |
| November 21, 2012 | June 26, 2013 | September 25, 2014 | June 10, 2015 |
| November 28, 2012 | September 21, 2013 | September 27, 2014 | July 9, 2015 |
| November 29, 2012 | September 22, 2013 | October 20, 2014 | July 10, 2015 |
| November 30, 2012 | September 30, 2013 | October 25, 2014 | September 16, 2015 |
| December 1, 2012 | October 1, 2013 | October 26, 2014 | October 28, 2015 |
| December 2, 2012 | November 18, 2013 | October 31, 2014 | November 2, 2015 |
| December 3, 2012 | November 19, 2013 | November 13, 2014 | November 8, 2015 |
| December 5, 2012 | December 7, 2013 | November 19, 2014 | November 9, 2015 |
| December 6, 2012 | January 11, 2014 | November 20, 2014 | November 15, 2015 |
| December 12, 2012 | January 29, 2014 | November 21, 2014 | November 24, 2015 |
| December 13, 2012 | January 30, 2014 | November 22, 2014 | December 3, 2015 |
| December 16, 2012 | February 2, 2014 | November 28, 2014 | December 5, 2015 |
| December 17, 2012 | February 6, 2014 | November 29, 2014 | December 9, 2015 |
| December 18, 2012 | February 7, 2014 | December 1, 2014 | December 10, 2015 |
| December 21, 2012 | February 8, 2014 | December 2, 2014 | December 12, 2015 |
| December 22, 2012 | February 9, 2014 | December 3, 2014 | December 13, 2015 |
| December 23, 2012 | February 10, 2014 | December 4, 2014 | December 20, 2015 |
| December 24, 2012 | February 14, 2014 | December 5, 2014 | December 21, 2015 |
| December 25, 2012 | February 16, 2014 | December 6, 2014 | December 22, 2015 |
| December 26, 2012 | February 26, 2014 | December 8, 2014 | December 24, 2015 |
| December 29, 2012 | February 27, 2014 | December 11, 2014 | December 28, 2015 |
| January 6, 2013 | February 28, 2014 | December 12, 2014 | January 3, 2016 |
| January 24, 2013 | March 1, 2014 | December 13, 2014 | January 4, 2016 |
| February 7, 2013 | March 2, 2014 | December 15, 2014 | January 5, 2016 |
| February 8, 2013 | March 3, 2014 | December 16, 2014 | January 6, 2016 |
| February 19, 2013 | March 6, 2014 | December 17, 2014 | January 7, 2016 |
| February 20, 2013 | March 10, 2014 | December 18, 2014 | January 9, 2016 |
| March 6, 2013 | March 25, 2014 | December 19, 2014 | January 10, 2016 |
| March 7, 2013 | March 26, 2014 | December 21, 2014 | January 12, 2016 |
| March 20, 2013 | March 27, 2014 | December 24, 2014 | January 13, 2016 |
| March 21, 2013 | March 29, 2014 | January 16, 2015 | January 16, 2016 |
| March 31, 2013 | March 31, 2014 | February 6, 2015 | January 17, 2016 |
| April 1, 2013 | April 1, 2014 | February 7, 2015 | January 18, 2016 |
| April 2, 2013 | April 2, 2014 | February 8, 2015 | January 19, 2016 |
| April 4, 2013 | April 4, 2014 | February 9, 2015 | January 20, 2016 |
| April 5, 2013 | April 25, 2014 | March 11, 2015 | January 22, 2016 |
| April 6, 2013 | April 26, 2014 | March 23, 2015 | January 23, 2016 |

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.

**ATTACHMENT A**
**Notice of Intent to File Suit, SPRQ**
**Significant Rain Events,* November 14, 2012 – November 14, 2017**

| | | |
|---|---|---|
| January 29, 2016 | November 15, 2016 | February 19, 2017 |
| February 1, 2016 | November 19, 2016 | February 20, 2017 |
| February 2, 2016 | November 20, 2016 | February 21, 2017 |
| February 17, 2016 | November 23, 2016 | March 4, 2017 |
| February 18, 2016 | November 25, 2016 | March 5, 2017 |
| February 19, 2016 | November 27, 2016 | March 6, 2017 |
| February 27, 2016 | December 8, 2016 | March 20, 2017 |
| March 3, 2016 | December 9, 2016 | March 21, 2017 |
| March 4, 2016 | December 10, 2016 | March 22, 2017 |
| March 5, 2016 | December 11, 2016 | March 24, 2017 |
| March 6, 2016 | December 14, 2016 | March 27, 2017 |
| March 7, 2016 | December 15, 2016 | April 6, 2017 |
| March 9, 2016 | December 23, 2016 | April 7, 2017 |
| March 10, 2016 | January 2, 2017 | April 8, 2017 |
| March 11, 2016 | January 3, 2017 | April 12, 2017 |
| March 12, 2016 | January 4, 2017 | April 13, 2017 |
| March 13, 2016 | January 5, 2017 | April 16, 2017 |
| March 14, 2016 | January 7, 2017 | April 17, 2017 |
| March 20, 2016 | January 8, 2017 | April 18, 2017 |
| March 21, 2016 | January 9, 2017 | April 20, 2017 |
| April 9, 2016 | January 10, 2017 | April 26, 2017 |
| April 10, 2016 | January 11, 2017 | June 8, 2017 |
| April 15, 2016 | January 12, 2017 | June 12, 2017 |
| April 22, 2016 | January 18, 2017 | September 7, 2017 |
| April 23, 2016 | January 19, 2017 | |
| April 27, 2016 | January 20, 2017 | |
| May 5, 2016 | January 21, 2017 | |
| May 7, 2016 | January 22, 2017 | |
| May 8, 2016 | January 23, 2017 | |
| October 3, 2016 | January 24, 2017 | |
| October 14, 2016 | February 2, 2017 | |
| October 15, 2016 | February 3, 2017 | |
| October 16, 2016 | February 4, 2017 | |
| October 24, 2016 | February 6, 2017 | |
| October 25, 2016 | February 7, 2017 | |
| October 27, 2016 | February 8, 2017 | |
| October 28, 2016 | February 9, 2017 | |
| October 29, 2016 | February 10, 2017 | |
| October 30, 2016 | February 16, 2017 | |
| October 31, 2016 | February 17, 2017 | |
| November 1, 2016 | February 18, 2017 | |

* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.