ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
Tel: (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
          wncarlon@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, <br><br> Plaintiff, <br><br> vs. <br><br> SOILAND CO., INC., et al, <br><br> Defendants. | **Case No.  4:18-cv-00377-KAW** <br><br><br> **STIPULATION TO DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE; [PROPOSED] ORDER GRANTING DISMISSAL WITH PREJUDICE [FRCP 41(a)(2)]** |

Plaintiff California Sportfishing Protection Alliance ("CSPA") and Defendants in the above-captioned action, stipulate as follows:

WHEREAS, on or about November 14, 2017, CSPA provided Defendants with a Notice of Violations and Intent to File Suit ("CWA 60-Day Notice Letter") under Section 505 of the Federal Water Pollution Control Act ("Act" or "Clean Water Act"), 33 U.S.C. § 1365;

WHEREAS, on January 17, 2018, CSPA filed its Complaint against Defendants in this Court and said Complaint incorporated by reference all of the allegations contained in CSPA's CWA 60-Day Notice Letter;

WHEREAS, CSPA and Defendants, through their authorized representatives and without either adjudication of CSPA's claims or admission by Defendants of any alleged violation or other wrongdoing, have chosen to resolve in full by way of settlement the allegations of CSPA as set forth in CSPA's CWA 60-Day Notice Letter and Complaint, thereby avoiding the costs and uncertainties

1
2
3

of further litigation.  A copy of the Parties' proposed settlement agreement ("Settlement Agreement") entered into by and between CSPA and Defendants is attached hereto as **Exhibit A** and incorporated by reference;

4
5
6

WHEREAS, CSPA has submitted the Settlement Agreement via certified mail, return receipt requested, to the U.S. EPA and the U.S. Department of Justice ("the agencies") and the U.S. Department of Justice has now filed their "Non-Opposition to Consent Judgment" (ECF No. 19);

7
8
9
10
11
12
13
14

NOW THEREFORE, IT IS HEREBY STIPULATED and agreed to by and between the Parties that CSPA's claims, as set forth in its CWA 60-Day Notice Letter and Complaint, be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2).  The Parties respectfully request an order from this Court dismissing such claims with prejudice.  In accordance with Paragraph 13 of the Settlement Agreement, the Parties also request that this Court retain and have jurisdiction over the Parties through August 31, 2020, for the sole purpose of resolving any disputes between the Parties with respect to enforcement of any provision of the Settlement Agreement.

15   Dated: July 16, 2018                    Respectfully submitted,

16
17   LAW OFFICES OF ANDREW L. PACKARD

By: /s/ William N. Carlon
18   William N. Carlon
Attorneys for Plaintiff
19

20   Dated: July 16, 2018                    CLEMENT, FITZPATRICK & KENWORTHY

21   By: /s/ Jeffrey S. Lyons
Jeffrey S. Lyons
22   Attorneys for Defendants

23                    **ATTESTATION FOR E-FILING**

24   I hereby attest pursuant to Civil L.R. 5-1(i)(3) that I have obtained concurrence in the filing of this document from the other Signatory prior to filing.
25

26   Dated: July 16, 2018                    By: /s/ William N. Carlon

27
28

STIPULATION RE DISMISSAL                                        Case No.  4:18-cv-00377-KAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**[PROPOSED] ORDER**

Good cause appearing, and the Parties having stipulated and agreed,

IT IS HEREBY ORDERED that Plaintiff California Sportfishing Protection Alliance claims against Defendants Soiland Co., Inc., Mark Soiland, and Marlene Soiland, as set forth in CSPA's CWA 60-Day Notice Letter and Complaint, are hereby dismissed with prejudice, each side to bear their own attorney fees and costs, except as provided for by the terms of the accompanying Settlement Agreement.

IT IS FURTHER ORDERED that the Court shall retain and have jurisdiction over the Parties with respect to disputes arising under the Settlement Agreement attached to the Parties' Stipulation to Dismiss as Exhibit A until August 31, 2020.

IT IS SO ORDERED.

Dated:  August 2, 2018 

_____
HON. KANDIS A. WESTMORE
UNITED STATES ~~DISTRICT COURT~~ JUDGE
MAGISTRATE

STIPULATION RE DISMISSAL                                    Case No.  4:18-cv-00377-KAW

# EXHIBIT A

ANDREW L. PACKARD (State Bar No. 168690)
WILLIAM N. CARLON (State Bar No. 305739)
Law Offices of Andrew L. Packard
245  Kentucky Street, Suite B3
Petaluma, CA 94952
Tel:  (707) 782-4060
Fax: (707) 782-4062
E-mail: andrew@packardlawoffices.com
        wncarlon@packardlawoffices.com

Attorneys for Plaintiff
CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>SOILAND CO., INC., MARK SOILAND, and MARLENE SOILAND,<br><br>                    Defendants. | Case No. 3:18-cv-00377-KAW<br><br>**SETTLEMENT AGREEMENT**<br>**(Federal Water Pollution Control Act,**<br>**33 U.S.C. §§ 1251 to 1387)** |

**WHEREAS,** Plaintiff California Sportfishing Protection Alliance (hereinafter "CSPA") is a non-profit public benefit corporation dedicated to the preservation, protection, and defense of the environment, wildlife, and natural resources of California's waters;

**WHEREAS,** Defendants Soiland Co., Inc., Mark Soiland, and Marlene Soiland (hereinafter "Soiland" or "Defendants") own and/or operate an approximately 121-acre facility at 7171 Stony Point Road, in Cotati, California where Defendants conduct various industrial activities including aggregate and rock material crushing, processing, stockpiling and recycling (concrete, tile, porcelain and asphalt shingles); and a landscape materials yard. (collectively, the "Facility");

1    **WHEREAS,** CSPA and Defendants collectively shall be referred to as the "Parties;"

2    **WHEREAS,** the Facility collects and discharges storm water from the Facility into

3    storm water conveyances which discharge to Washoe Creek, which drains to Laguna de Santa

4    Rosa, which drains to Santa Rosa Creek, which drains to Mark West Creek, which ultimately

5    drains to the Russian River (a map of the Facility is attached hereto as **Exhibit A** and

6    incorporated herein by reference);

7    **WHEREAS,** storm water discharges associated with industrial activity are regulated

8    pursuant to the National Pollutant Discharge Elimination System ("NPDES"), General Permit

9    No. CAS000001, State Water Resources Control Board ("State Board") Water Quality Order

10   No. 14-57-DWQ, issued pursuant to Section 402(p) of the Clean Water Act ("Act"), 33 U.S.C.

11   §1342(p), (hereinafter "General Permit") and, prior to July 1, 2015, were regulated by Water

12   Quality Order No. 91-13-DWQ, as amended by Water Quality Order 92-12-DWQ and 97-03-

13   DWQ;

14   **WHEREAS,** on or about November 14, 2017, Plaintiff provided notice of Defendants'

15   violations of the Act ("Clean Water Act Notice Letter"), and of its intention to file suit against

16   Defendants to the Administrator of the United States Environmental Protection Agency

17   ("EPA"); the Administrator of EPA Region IX; the U.S. Attorney General; the Executive

18   Director of the State Board; the Executive Officer of the Regional Water Quality Control

19   Board, North Coast Region ("Regional Board"); and to Defendants, as required by the Act, 33

20   U.S.C. § 1365(b)(1)(A) (a true and correct copy of CSPA's Clean Water Act Notice Letter is

21   attached hereto as **Exhibit B** and incorporated herein by reference);

22   **WHEREAS,** Defendants deny the occurrence of the violations alleged in the Clean

23   Water Act Notice Letter and maintain that Soiland has complied at all times with the

24   provisions of the General Permit and the Clean Water Act or, alternatively, that there are no

25   "ongoing and continuous" violations of the General Permit or the Act;

26   **WHEREAS,** the Parties agree that it is in their mutual interest to resolve this matter as

27   to all entities and persons named in the Notice Letters without litigation and enter into this

28

- 2 -

Consent Agreement ("Agreement");

**WHEREAS**, on or about January 17, 2018, CSPA filed a complaint against Defendants in the United States District Court, Northern District of California (this matter is hereinafter referred to as "the Action");

**WHEREAS**, for purposes of this Agreement only, the Parties stipulate that venue is proper in this Court, and that Defendants do not contest the exercise of jurisdiction by this Court to dismiss this matter with prejudice under the terms of this Agreement;

**WHEREAS**, within five (5) calendar days of mutual execution, this Agreement shall be submitted to the United States Department of Justice for the 45-day statutory review period, pursuant to 33 U.S.C. § 1365(c);

**WHEREAS**, at the time the Agreement is submitted for approval to the United States District Court, CSPA shall submit a Notice of Settlement in the District Court and inform the Court of the expected dismissal date following the expiration of the statutory review period identified above;

**AND WHEREAS**, within ten (10) calendar days of expiration of the statutory review period, or the earlier receipt of non-objection from the United States Department of Justice, the Parties shall file with the Court a Stipulation and Order that shall provide that the Complaint and all claims therein shall be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) concurrently with the District Court's retention of jurisdiction for the enforcement of this Agreement as provided herein (the date of entry of the Order to dismiss shall be referred to herein as the "Court Approval Date").

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AS FOLLOWS:**

**I.    COMMITMENTS OF DEFENDANTS**

1.    **Compliance with General Permit and the Clean Water Act.**  Throughout the term of this Agreement, Soiland shall continue implementing all measures needed to operate the Facility in compliance with the requirements of the General Permit and the Clean Water Act, subject to any defenses available under the law.

- 3 -

1    **2.    Implementation of Specific Storm Water Best Management Practices.**

2    Unless otherwise indicated below, on or before **October 1, 2018**, Soiland shall complete the

3    implementation and incorporation into the Facility's Storm Water Pollution Prevention Plan

4    ("SWPPP") of the following storm water source control measures/Best Management Practices

5    ("BMPs") at the Facility:

6         (a)    *Quarry BMPs.* Defendants shall implement the following BMPs:

7              i.    To minimize the potential for contamination from blasting activities,

8         Defendants shall pump all of the pit water out of the quarry before each blast;

9              ii.    Defendants shall have, on hand, a portable pump to serve as a back-up in

10        the event of any pump failure; and,

11             iii.    Defendants shall not operate heavy machinery (e.g. trucks, tractors,

12        loaders, bulldozers, etc.) in any quarry pit sump containing water that will be

13        pumped to Pond #1.

14        (b)    *Develop a Representative Sampling Reduction Justification for CSP #1.*

15   Defendants shall revise the Facility's SWPPP to include a Representative Sampling Reduction

16   justification for CSP #1 pursuant to Section XI.C.4.b of the General Permit.

17        (c)    *Vegetation of Bioswale Between Ponds #1 and #2.* On or before October 1,

18   2018, Defendants shall plant vegetation throughout the existing bioswale between Ponds #1

19   and #2 pursuant to the "BIO-SWALE DETAIL" drawing attached here as **Exhibit C.**

20        (d)    *Management of Reclaimed Rebar.* Defendants shall limit the amount of rebar it

21   stockpiles at the facility to one truck load at any one time. Defendants shall divert any run-on

22   and storm water generated within the Facility away from stockpiled rebar.

23        (e)    *Installation of Pumps at CSP #3 and CSP #4.* Defendants shall install one pump

24   at the entrance gate (CSP #3) and one pump at the exit gate (CSP #4). These pumps shall be

25   sized in accordance with Section X.H.6.b.i of the General Permit and will pump all flows from

26   these two drainage areas to Pond #1. Defendants shall continue to conduct visual observations

27

28

- 4 -

during rain events and in the event either CSP #3 or CSP #4 discharges, Defendants shall collect samples from each discharge point pursuant to Section XI.B of the General Permit.

(f)    *Reconstruction of Ditch Between Pond #3 and CSP #5.*    Defendants shall reconstruct the ditch between Pond #3 and CSP #5 pursuant to the BMP detail specifications attached hereto as **Exhibit C**.  Defendants shall install filtration media immediately prior to where storm water discharges from CSP #5, such that any discharge must pass through the filtration media.

(g)    *Draining and Cleaning of Pond #4.*    Defendants shall drain Pond #4 before the Wet Season begins (October 15 of each year) by pumping the water in Pond #4 into the SPRQ water truck and using the water for dust abatement during the end of the dry season. Defendants shall remove the sediment in Pond #4 after it is emptied and dispose of the sediment onto the spoils pile, where Defendants will seed and mulch at the end of each dry season.

(h)    *Installation of Berm Around Wet Plant.*    Defendants shall construct a straw bale berm around the processing plant, identified in the Facility Site Map attached hereto as **Exhibit A**.  Defendants shall ensure the berm is maintained in good condition, replacing straw bales as the existing bales degrade.

(i)    *Installation of a Culvert from Pond #5 to Pond #1.*    Defendants shall install a subsurface culvert from Pond #5 to Pond #1 such that Pond #5 will drain to Pond #1.

(j)    *Visual Observation Reports.*    Defendants shall continue to conduct visual observations during all rain events and log each such inspection with the SWPPP.

(k)    *Facility Mapping.*    On or before June 13, 2018, Defendants agree to revise the Facility's Site Map to comply with all of the requirements in Section X.E.1-3 of the General Permit.  Soiland shall ensure that the revised Site Map includes all areas of the Facility that are subject to industrial activities.

(l)    *Increased Employee Training.* Defendants shall send Soiland's Storm Water Pollution Prevention Team ("SWPPT") to an Industrial General Permit, industrial storm water

- 5 -

1    BMP installation, and storm water monitoring training course by October 1, 2018.  Soiland

2    shall increase training for Soiland's SWPPT, including holding one training meeting in

3    January and one training meeting in October of each year.  Soiland shall incorporate the

4    holding of these twice-annual meetings in its new SWPPP.  Soiland shall target training on

5    tracking what storm events qualify for sampling purposes, undertaking visual monitoring, and

6    logging and properly reporting data in the Facility's SWPPP, Annual Report and the State's

7    on-line reporting system ("SMARTS").  Soiland shall log these meetings with the date,

8    materials covered, written agenda, and a list of attendees for each, and shall retain these logs

9    with the SWPPP.  Soiland shall have at least one member of the SWPPT, that meets the

10   certification qualifications, be formally certified as a Qualified Industrial Storm Water

11   Practitioner ("QISP");

12          (m)    *Rain Data.*  Soiland shall maintain a fully automated rain gauge at the Facility.

13   **3.**       **SWPPP Amendments.**  On or before July 1, 2018 Defendants shall amend the

14   Facility SWPPP to incorporate all of the relevant requirements of this Agreement and the

15   General Permit.  These revisions shall reflect all then-current site conditions and practices and

16   identify potential Contaminants of Concern ("COC"), identify the location of all pervious and

17   impervious areas, drop inlets, BMPs, and storm water flow vectors.  These revisions shall also

18   provide for required data logging; weekly monitoring and maintenance of all Facility

19   collection and discharge points during the Wet Season; and twice-annual storm water

20   management training for Facility employees.

21          **4.**       **Sampling Frequency.**    For the 2018-2019 and 2019-2020 reporting years

22   ending June 30th (2019 and 2020), Defendants shall collect and analyze samples from four (4)

23   Qualifying Storm Events[1] ("QSEs") within the first half of each reporting year (July 1 to

---

[1] A Qualifying Storm Event (QSE) is defined in the Revised General Permit as a precipitation event that: (a) Produces a discharge for at least one drainage area; and (b) is preceded by 48 hours with no discharge from any drainage area.  *See* Revised General Permit, Section XI(b)(1).

SETTLEMENT AGREEMENT                                    Case No. 3:18-cv-00377-KAW

1    December 31), and four (4) QSEs within the second half of each reporting year (January 1 to
2    June 30). The storm water sample results shall be compared with the values set forth in
3    **Exhibit D**, attached hereto, and incorporated herein by reference. If the results of any such
4    samples exceed the parameter values set forth in **Exhibit D**, Defendants shall comply with the
5    "Action Memorandum" requirements set forth below.

6       5.      **Sampling Parameters.** All eight (8) samples in each reporting year shall be
7    analyzed for each of the constituents listed in **Exhibit D**, including TMDLs, as applicable, by a
8    laboratory accredited by the State of California, except for pH, which shall be analyzed in the
9    field using a handheld, properly calibrated pH meter. All samples collected from the Facility
10   shall be delivered to the laboratory as soon as possible to ensure that sample "hold time" is not
11   exceeded. Analytical methods used by the laboratory shall comply with General Permit
12   requirements in regards to both test method and detection limit. See General Permit, Table 2,
13   at 43. Sampling results shall be provided to CSPA within seven (7) days of Defendants'
14   receipt of the laboratory report from each sampling event, pursuant to the Notice provisions
15   below.

16      6.      **Exceedance Response Actions ("ERA"); CSPA's Review Of ERA Reports;**
17   **Meet-and-Confer.** If the results of sampling discussed herein exceed the applicable NALs set
18   forth in **Exhibit D**, Defendants shall comply with the applicable requirements of the Revised
19   General Permit, including the applicable Exceedance Response Action ("ERA") described in
20   Sections I.M and XII of the Revised General Permit. Any Level 1 ERA Evaluation required
21   under Section XII.C.1 of the Revised General Permit during the term of this Agreement shall
22   be memorialized in a memorandum and shared with Plaintiff pursuant to the Notice provisions
23   of this Agreement on or before its due date (October 1); at Plaintiff's request, the parties shall
24   meet and confer regarding the sufficiency of the evaluation. Any Level 1 ERA Report
25   required under Section XII.C.2 of the Revised General Permit during the term of this
26   Agreement shall be shared with Plaintiff pursuant to the Notice provisions of this Agreement
27   on or before its due date (January 1); at Plaintiff's request, the parties shall meet and confer

28

- 7 -

1   regarding the sufficiency of the report.   Any Level 2 ERA Action Plan required under Section

2   XII.D.1 of the Revised General Permit during the term of this Agreement shall be shared with

3   Plaintiff pursuant to the Notice provisions of this Agreement on or before its due date (January

4   1); at Plaintiff's request, the parties shall meet and confer regarding the sufficiency of the plan.

5   Any Level 2 ERA Technical Report required under Section XII.D.2 of the Revised General

6   Permit during the term of this Agreement shall be shared with Plaintiff pursuant to the Notice

7   provisions of this Agreement on or before its due date (January 1); at Plaintiff's request, the

8   parties shall meet and confer regarding the sufficiency of the report.

9       7.       **Inspections During The Term Of This Agreement.**  In addition to any site

10   inspections conducted as part of the settlement process and the meet-and-confer process

11   concerning an Action Memorandum as set forth above, Defendants shall permit

12   representatives of CSPA to perform up to two (2) physical inspections of the Facility during

13   the term of this Agreement.  These inspections shall be performed by CSPA's counsel and

14   consultants and may include sampling, photographing, and/or videotaping and CSPA shall

15   provide Defendants with a copy of all sampling reports, photographs and/or video.  CSPA

16   shall provide at least forty-eight (48) hours advance notice of such physical inspection, except

17   that Defendants shall have the right to deny access if circumstances would make the inspection

18   unduly burdensome and pose significant interference with business operations or any

19   party/attorney, or the safety of individuals.  In such case, Defendants shall specify at least

20   three (3) dates within the two (2) weeks thereafter upon which a physical inspection by CSPA

21   may proceed.  Defendants shall not make any alterations to Facility conditions during the

22   period between receiving CSPA's initial forty-eight (48) hour advance notice and the start of

23   CSPA's inspection that Defendants would not otherwise have made but for receiving notice of

24   CSPA's request to conduct a physical inspection of the Facility, excepting any actions taken in

25   compliance with any applicable laws or regulations.  Nothing herein shall be construed to

26   prevent Defendants from continuing to implement any BMPs identified in the SWPPP during

27   the period prior to an inspection by CSPA or at any time.

28

SETTLEMENT AGREEMENT                                   Case No. 3:18-cv-00377-KAW

8.    **Communications To/From Regional and State Water Boards.** During the term of this Agreement, Soiland shall provide CSPA with copies of all documents submitted to, or received from, the Regional Water Board or the State Water Board concerning storm water discharges from the Facility, including, but not limited to, all documents and reports submitted to the Regional Water Board and/or State Water Board as required by the current General Permit. Such documents and reports shall be provided to CSPA pursuant to the Notice provisions set forth below and contemporaneously with Soiland's submission(s) to, or, receipt from, such agencies.

9.    **SWPPP Amendments.** Pursuant to the Notice provisions set forth below, Defendants shall provide CSPA with a complete copy of the updated version of the Facility SWPPP within fourteen (14) days of any amendments to the Facility SWPPP made during the term of the Agreement.

## II.    MITIGATION, COMPLIANCE MONITORING AND FEES AND COSTS

10.    **Mitigation Payment In Lieu Of Civil Penalties Under the Clean Water Act.** As mitigation to address any potential harms from the Clean Water Act violations alleged in CSPA Complaint, Defendants agree to pay the sum of $52,500 to the Rose Foundation for Communities and the Environment ("Rose Foundation") for projects to improve water quality in Laguna de Santa Rosa and the Russian River. Such mitigation payment shall be remitted directly to the Rose Foundation at: Rose Foundation, Attn: Tim Little, 201 4th Street, Suite 102, Oakland, CA 94607 within ten (10) days of the Court Approval Date.

11.    **Compliance Monitoring Funding.** To defray CSPA's reasonable investigative, expert, consultant and attorneys' fees and costs associated with monitoring Defendants' compliance with this Agreement, Defendants agree to contribute $8,750 for each of the two Wet Seasons covered by this Agreement ($17,500 total for the life of the Agreement), to a compliance monitoring fund maintained by counsel for CSPA as described below. Payment shall be made payable to the "Law Offices of Andrew L. Packard

- 9 -

Attorney-Client Trust Account" and remitted to Plaintiff's counsel within ten (10) days of the Court Approval Date.  Compliance monitoring activities may include, but shall not be limited to, site inspections, review of water quality sampling reports, review of annual reports, discussions with Defendants concerning the ERA reports referenced above, and potential changes to compliance requirements herein.

**12.    Reimbursement of Fees & Costs.**  Defendants agree to reimburse CSPA in the amount of $41,500 to defray CSPA's reasonable investigative, expert, consultant, and attorneys' fees and costs, and all other costs incurred as a result of investigating the activities at the Facility, bringing the action, and negotiating a resolution of this action in the public interest.  Such payment shall be made payable to the "Law Offices of Andrew L. Packard Attorney Client Trust Account" and remitted to the firm within ten (10) days after the Court Approval Date.

## III.    DISPUTE RESOLUTION AND ENFORCEMENT OF CONSENT AGREEMENT

**13.**    With the exception of the timelines set forth above for addressing exceedances of values specified in **Exhibit D** and the ERA reports, if a dispute under this Agreement arises, or either Party believes that a breach of this Agreement has occurred, the Parties shall meet and confer within seven (7) days of receiving written notification from the other Party of a request for a meeting to determine whether a breach has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute.  If the Parties fail to meet and confer, or the meet-and-confer does not resolve the issue, after at least seven (7) days have passed after the meet-and-confer occurred or should have occurred, either Party shall be entitled to all rights and remedies under the law, including filing a motion with the District Court of California, Northern District, which shall retain jurisdiction over the Action until the Termination Date for the limited purposes of enforcement of the terms of this Agreement.  The Parties shall be entitled to seek fees and costs incurred in any such motion, and such fees and costs shall be awarded, pursuant to the provisions set forth in the then-applicable federal Clean

1  Water Act and Rule 11 of the Federal Rules of Civil Procedure, and applicable case law
2  interpreting such provision.

3      **14.    CSPA's Waiver and Release.**  Upon the Court Approval Date of this
4  Agreement, CSPA, on its own behalf and on behalf of its members, subsidiaries, successors,
5  assigns, directors, officers, agents, attorneys, representatives, and employees, releases
6  Defendants and its officers, directors, employees, shareholders, parents, subsidiaries, and
7  affiliates, and each of its predecessors, successors and assigns, and each of their agents,
8  attorneys, consultants, and other representatives (each a "Released Defendant Party") from,
9  and waives all claims which arise from or pertain to the Action, including, without limitation,
10  all claims for injunctive relief, damages, penalties, fines, sanctions, mitigation, fees (including
11  fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or
12  which could have been claimed in this Action, for the alleged failure of Defendants to comply
13  with the Clean Water Act at the Facility, up to the Court Approval Date.

14      **15.    Defendants' Waiver and Release.**  Defendants, on their own behalf and on
15  behalf of any Released Defendant Party under its control, release CSPA (and its officers,
16  directors, employees, members, parents, subsidiaries, and affiliates, and each of their
17  successors and assigns, and its agents, attorneys, and other representative) from, and waives all
18  claims which arise from or pertain to the Action, including all claims for fees (including fees
19  of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or
20  which could have been claimed for matters associated with or related to the Action.

21  **IV.    MISCELLANEOUS PROVISIONS**

22      **16.**    The Parties enter into this Agreement for the purpose of avoiding prolonged
23  and costly litigation.  Nothing in this Agreement shall be construed as, and Defendants
24  expressly do not intend to imply, an admission as to any fact, finding, issue of law, or violation
25  of law, nor shall compliance with this Agreement constitute or be construed as an admission
26  by Defendants of any fact, finding, conclusion, issue of law, or violation of law.  However,

27

28

- 11 -

this paragraph shall not diminish or otherwise affect the obligation, responsibilities, and duties of the Parties under this Agreement.

17.    The Agreement shall be effective upon mutual execution by all Parties. The Agreement shall terminate on the "Termination Date," which shall be August 31, 2020.

18.    The Agreement may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document. An executed copy of this Agreement shall be valid as an original.

19.    In the event that any one of the provisions of this Agreement is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

20.    The language in all parts of this Agreement, unless otherwise stated, shall be construed according to its plain and ordinary meaning. This Agreement shall be construed pursuant to the law of the United Sates, without regarding to choice of law principles.

21.    The undersigned are authorized to execute this Agreement on behalf of their respective Parties and have read, understood and agreed to be bound by all of the terms and conditions of this Agreement.

22.    All agreements, covenants, representations and warranties, express or implied, oral or written, of the Parties concerning the subject matter of this Agreement are contained herein. This Agreement and its attachments are made for the sole benefit of the Parties, and no other person or entity shall have any rights or remedies under or by reason of this Agreement, unless otherwise expressly provided for therein.

23.    **Notices.** Any notices or documents required or provided for by this Agreement or related thereto that are to be provided to CSPA pursuant to this Agreement shall be hand-delivered or sent by U.S. Mail, postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail transmission to the email addresses listed below:

William Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainer Avenue
Stockton, California 95204
Tel: (209) 464-5067
E-mail: deltakeep@me.com

- 12 -

1

2

3

4          With copies sent to:

5          Andrew L. Packard
           William N. Carlon
6          Law Offices of Andrew L. Packard
           245 Kentucky Street, Suite B3
7          Petaluma, California 94952
           Tel: (707) 782-4060
8          E-mail: andrew@packardlawoffices.com
                    wncarlon@packardlawoffices.com

9    Any notices or documents required or provided for by this Agreement or related thereto that

10   are to be provided to Defendants pursuant to this Agreement shall be sent by U.S. Mail,

11   postage prepaid, and addressed as follows or, in the alternative, shall be sent by electronic mail

12   transmission to the email addresses listed below:

13          Mark D. Soiland
            Soiland Co., Inc.
14          7171 Stony Point Road
15          Cotati, CA 94931
            E-mail: Mark@SoilandRocks.com
16
     With copies sent to:
17
            Jeffrey Lyons
18          Clement, Fitzpatrick & Kenworthy Inc.
            3333 Mendocino Avenue
19          Santa Rosa, CA 95403
            Tel: (707) 568-2255
20          E-mail: jlyons@cfk.com

21   Each Party shall promptly notify the other of any change in the above-listed contact

22   information.

23          24.     Signatures of the Parties transmitted by facsimile or email shall be deemed

24   binding.

25          25.     If for any reason the Court should decline to approve this Agreement in the

26   form presented, the Parties shall use their best efforts to work together to modify the

27   Agreement within thirty (30) days so that it is acceptable to the Court. If the Parties are unable

28
                                              - 13 -

1    to modify this Agreement in a mutually acceptable manner, this Agreement shall become null
2    and void.

3        **26.**      This Agreement shall be deemed to have been drafted equally by the Parties,
4    and shall not be interpreted for or against any Settling Party on the ground that any such party
5    drafted it.

6        **27.**      This Agreement and the attachments contain all of the terms and conditions
7    agreed upon by the Parties relating to the matters covered by the Agreement, and supersede
8    any and all prior and contemporaneous agreements, negotiations, correspondence,
9    understandings, and communications of the Parties, whether oral or written, respecting the
10   matters covered by this Agreement.

11       **28.**      This Agreement may be amended or modified only by a writing signed by the
12   Parties or their authorized representatives.

13       The Parties hereto enter into this Agreement and respectfully submit it to the Court for
14   its approval and entry.

15   Dated:  June _____**6**_____, 2018          California Sportfishing Protection Alliance

16

17                                          By:   _____
18                                                William Jennings, Executive Director

19
20   Dated:  June_____, 2018           Soiland Co., Inc.

21
22                                          By:   _____
                                                 Mark D. Soiland, Chief Executive Officer

23
24
25
26
27
28

- 14 -

1    to modify this Agreement in a mutually acceptable manner, this Agreement shall become null
2    and void.

3        **26.**    This Agreement shall be deemed to have been drafted equally by the Parties,
4    and shall not be interpreted for or against any Settling Party on the ground that any such party
5    drafted it.

6        **27.**    This Agreement and the attachments contain all of the terms and conditions
7    agreed upon by the Parties relating to the matters covered by the Agreement, and supersede
8    any and all prior and contemporaneous agreements, negotiations, correspondence,
9    understandings, and communications of the Parties, whether oral or written, respecting the
10   matters covered by this Agreement.

11       **28.**    This Agreement may be amended or modified only by a writing signed by the
12   Parties or their authorized representatives.

13       The Parties hereto enter into this Agreement and respectfully submit it to the Court for
14   its approval and entry.

15   Dated: June_____, 2018          California Sportfishing Protection Alliance

16

17                               By:    _____
18                                      William Jennings, Executive Director

19
20   Dated: June____6____, 2018          Soiland Co., Inc.

21
22                               By:    _____
23                                    Mark D. Soiland, Chief Executive Officer

24
25
26
27
28

                                     - 14 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**EXHIBIT A – Facility Site Map**

26

27

REUSE OF DOCUMENTS: This document and the ideas and design incorporated herein, as an instrument of professional service, is the property of LACO Associates and shall not be reused in whole or part for any other project without LACO Associates express written authorization.

## KEY NOTES

1. GROUNDWATER EXTRACTION SUMP
2. GROUNDWATER CONVEYANCE PIPING TO POND #1
3. POND #2 DISCHARGE TO 24" STORM DRAIN PIPE
4. 24" STORM DRAIN PIPE DISCHARGES TO ROADSIDE DITCH
5. 24" STORM DRAIN, DISCHARGES TO WASHOE CREEK
6. DRY SEASON GROUNDWATER CONVEYANCE PIPING TO POND #1/POND #1 OVERFLOW CONVEYANCE PIPING TO POND #2.
7. 18" STORM DRAIN DISCHARGES TO ROADSIDE DITCH
8. POND #3 LOWER SETTLING BASIN
9. POND #3 UPPER BIO-RETENTION BASIN
10. FLOW CONTROL WEIR BETWEEN UPPER AND LOWER BASINS
11. FRENCH DRAIN GROUND WATER INTERCEPTOR BENEATH SHINGLES STOCKPILE
12. PROPOSED SEASONAL DRAINAGE SWALE
13. TEMPORARY SETTLING BASIN
14. SUMP PUMP IN ENTRANCE/EXIT GATE
15. ROCKLINED DITCH WITH CHECK DAMS
16. STRAW BALE BERM

LACO
EUREKA • UKIAH • SANTA ROSA
1-800-515-5054    www.lacoassociates.com

WASHOE CREEK

CSP#3  CSP#6  CSP#4  CSP#5

CSP#2

W SIERRA AVE.

STONY POINT RD.

EARTHEN BERM

POND #1

POND #4

DRAINAGE AREA 3

CONCRETE STOCK PILE

DRAINAGE AREA 4

DRAINAGE AREA 7

DRAINAGE AREA 5

POND #3

ICP#2
ICP#3
ICP#1

ASPHALT SHINGLES PILE

DRAINAGE AREA 6

POND #5

POND #2

INACTIVE SPOILS PILE

DRAINAGE AREA 2

EARTHEN BERM

SEED/MULCH ON MUD/SPOILS PILE EVERY FALL. SEED WITH ANNUAL GRASS SEED MIX OF BLUEGRASS, TALL FESCUE, AND BROME, 100 POUNDS PER ACRE.

SEED/MULCH ON MUD/SPOILS PILE EVERY FALL. SEED WITH ANNUAL GRASS SEED MIX OF BLUEGRASS, TALL FESCUE, AND BROME, 100 POUNDS PER ACRE.

INACTIVE SPOILS PILE

NO DEFINED DISCHARGE LOCATION — CONCENTRATED FLOW IF PRESENT

ACTIVE SPOILS PILE

### LEGEND:

- FLOW DIRECTION
- ★ SAMPLING LOCATION
- FLOWLINE CREEK/DITCH
- SD STORM DRAIN PIPE
- FACILITY BOUNDARY
- DRAINAGE AREAS
- AREA OF INDUSTRIAL ACTIVITY
- IMPERVIOUS AREA
- B VEGETATED BIO-SWALE
- CHECK DAM
- SPOILS PILE

STONY POINT ROCK QUARRY
STORM WATER POLLUTION PREVENTION PLAN
SITE PLAN

SOILAND CO. INC
7171 STONY POINT ROAD, COTATI, CA

| DRAWN | BD/GG |
| CHECK | ZHJ/JRG |
| APPROVED | CJW |
| DATE | 06/18/18 |
| JOB NUMBER | 7414.02 |

FIGURE 1

SCALE: 1"=250'    0'  125'  250'

Jun 18,2018-3:33pm
T:\Lacfiles\7400\7414.02 STONY POINT\DWG\7414.02 CIV SWPP -c.dwg

**KEY NOTES**

1. GROUNDWATER EXTRACTION SUMP
2. GROUNDWATER CONVEYANCE PIPING TO POND #1
3. POND #2 DISCHARGE TO 24" STORM DRAIN PIPE
4. 24" STORM DRAIN PIPE DISCHARGES TO ROADSIDE DITCH
5. 24" STORM DRAIN, DISCHARGES TO WASHOE CREEK
6. DRY SEASON GROUNDWATER CONVEYANCE PIPING TO POND #1/POND #1 OVERFLOW CONVEYANCE PIPING TO POND #2.
7. 18" STORM DRAIN DISCHARGES TO ROADSIDE DITCH
8. POND #3 LOWER SETTLING BASIN
9. POND #3 UPPER BIO-RETENTION BASIN
10. FLOW CONTROL WEIR BETWEEN UPPER AND LOWER BASINS
11. FRENCH DRAIN GROUND WATER INTERCEPTOR BENEATH SHINGLES STOCKPILE
12. PROPOSED SEASONAL DRAINAGE SWALE
13. TEMPORARY SETTLING BASIN
14. SUMP PUMP IN ENTRANCE/EXIT GATE
15. ROCKLINED DITCH WITH CHECK DAMS
16. STRAW BALE BERM

**LEGEND:**

- FLOW DIRECTION
- SAMPLING LOCATION
- FLOWLINE CREEK/DITCH
- SD — STORM DRAIN PIPE
- FACILITY BOUNDARY
- DRAINAGE AREAS
- AREA OF INDUSTRIAL ACTIVITY
- IMPERVIOUS AREA
- VEGETATED BIO-SWALE
- CHECK DAM
- SPOILS PILE

STONY POINT ROCK QUARRY
STORM WATER POLLUTION PREVENTION PLAN
SITE PLAN

SOILAND CO. INC.
7171 STONY POINT ROAD, COTATI, CA

| DRAWN | BD/GG |
| CHECK | ZH/JRG |
| APPROVED | CJW |
| DATE | 06/18/18 |
| JOB NUMBER | 7414.02 |
| FIGURE | 2 |

SCALE: 1"=200'

0'     100'     200'

REUSE OF DOCUMENTS: This document and the ideas and design incorporated herein, as an instrument of professional service, is the property of LACO Associates and shall not be reused in whole or part for any other project without LACO Associates express written authorization.



## KEY NOTES

| | |
|---|---|
| 1 | GROUNDWATER EXTRACTION SUMP |
| 2 | GROUNDWATER CONVEYANCE PIPING TO POND #3 |
| 3 | POND #2 DISCHARGE TO 24" STORM DRAIN PIPE |
| 4 | 24" STORM DRAIN PIPE DISCHARGES TO ROADSIDE DITCH |
| 5 | 24" STORM DRAIN, DISCHARGES TO WASHOE CREEK |
| 6 | DRY SEASON GROUNDWATER CONVEYANCE PIPING TO POND #1/POND #1 OVERFLOW CONVEYANCE PIPING TO POND #2. |
| 7 | 18" STORM DRAIN DISCHARGES TO ROADSIDE DITCH |
| 8 | POND #3 LOWER SETTLING BASIN |
| 9 | POND #3 UPPER BIO-RETENTION BASIN |
| 10 | FLOW CONTROL WEIR BETWEEN UPPER AND LOWER BASINS |
| 11 | FRENCH DRAIN GROUND WATER INTERCEPTOR BENEATH SHINGLES STOCKPILE |
| 12 | PROPOSED SEASONAL DRAINAGE SWALE |
| 13 | TEMPORARY SETTLING BASIN |
| 14 | SUMP PUMP IN ENTRANCE/EXIT GATE |
| 15 | ROCKLINED DITCH WITH CHECK DAMS |
| 16 | STRAW BALE BERM |

**LACO**

EUREKA • UKIAH • SANTA ROSA

1-800-515-5054

www.lacoassociates.com

SEED/MULCH ON MUD/SPOILS PILE EVERY FALL. SEED WITH ANNUAL GRASS SEED MIX OF BLUEGRASS, TALL FESCUE, AND BROME, 100 POUNDS PER ACRE.

### LEGEND:

| | |
|---|---|
| →► | FLOW DIRECTION |
| ★ | SAMPLING LOCATION |
| | FLOWLINE CREEK/DITCH |
| | STORM DRAIN PIPE AND FLOW DIRECTION |
| SD | STORM DRAIN CULVERT |
| | FACILITY BOUNDARY |
| | DRAINAGE AREAS |
| | AREA OF INDUSTRIAL ACTIVITY |
| | IMPERVIOUS AREA |
| -B- | VEGETATED BIO-SWALE |
| | CHECK DAM |
| | SPOILS PILE |
| | STOCK PILE |

SCALE: 1"=150'

0'        75'       150'

STONY POINT ROCK QUARRY
STORM WATER POLLUTION PREVENTION PLAN
SITE PLAN

SOILAND CO. INC
7171 STONY POINT ROAD, COTATI, CA

| | |
|---|---|
| DRAWN | BD/GG |
| CHECK | OKW |
| APPROVED | CJW |
| DATE | 06/18/18 |
| JOB NUMBER | 7414.02 |
| FIGURE | |

**3**

Jun. 18,2018–1:14pm
T:\Lcadfiles\74020\7414.02 STONY POINT\DWG\7414.02 CIV SWPP.dwg

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**EXHIBIT B – CWA Notice of Violation and Intent to Sue Letter**

LAW OFFICES OF
## ANDREW L. PACKARD

245 KENTUCKY STREET, SUITE B3, PETALUMA, CA 94952
PHONE (707) 782-4060   FAX (707) 782-4062
INFO@PACKARDLAWOFFICES.COM

November 14, 2017

**VIA CERTIFIED MAIL**

Mark D. Soiland, Chief Executive Officer
Soiland Co., Inc.
7171 Stony Point Road
Cotati, CA 94931

Marlene K. Soiland, Secretary, Chief Financial
Officer, and Agent for Service of Process
Soiland Co., Inc.
7171 Stony Point Road
Cotati, CA 94931

**Re:   NOTICE OF VIOLATIONS AND INTENT TO FILE SUIT UNDER THE
FEDERAL WATER POLLUTION CONTROL ACT ("CLEAN WATER ACT")
(33 U.S.C. §§ 1251 *et seq.*)**

Dear Mark and Marlene Soiland:

This firm represents California Sportfishing Protection Alliance ("CSPA") in regard to violations of the Clean Water Act ("the Act") occurring at Stony Point Rock Quarry's ("SPRQ") aggregate and soil processing facility located at 7171 Stony Point Road, in Cotati, California (the "Facility"). This letter is being sent to you as the responsible owners, officers and/or operators of the Facility, or as the registered agent for this entity. Unless otherwise noted, Mark Soiland, Marlene Soiland, Soiland Co., Inc. and Stony Point Rock Quarry shall hereinafter be collectively referred to as "SPRQ." The purpose of this letter is to provide SPRQ with notice of the violations of the Industrial General Permit occurring at the Facility, including, but not limited to, discharges of polluted storm water associated with industrial activities from the Facility into local surface waters.

SPRQ is in ongoing violation of the substantive and procedural requirements of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, and National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001, State Water Resources Control Board Water Quality Order No. 14-57-DWQ ("General Permit" or "Permit").[1] Prior to July 1, 2015, SPRQ's storm water discharges were regulated under Water Quality Order No. 91-13-DWQ, as amended by Water Quality Orders 92-12-DWQ and 97-03-DWQ.

On July 1, 2015 the 2015 General Permit went into effect, superseding the 1997 General Permit that was operative between 1997 and June 30, 2015. The 2015 General Permit includes many of the same fundamental requirements and implements many of the same statutory

---

[1] SPRQ submitted a Notice of Intent (NOI) to comply with the General Permit for the Cotati Facility on or about June 8, 2015.



Notice of Violation and Intent To File Suit
November 14, 2017
Page 2

requirements as the 1997 General Permit.  Violation of both the 1997 and 2015 General Permit provisions is enforceable under the law.  General Permit, Finding A.6.

Pursuant to Section 309(d) of the Act (33 U.S.C. § 1319(d)) and the Adjustment of Civil Monetary Penalties for Inflation, 40 C.F.R. § 19.4, each separate violation of the Act subjects SPRQ to a penalty for all violations occurring during the period commencing five years prior to the date of the Notice Letter.  These provisions of law authorize civil penalties of up to $37,500 per day per violation for all Clean Water Act violations occurring after January 12, 2009 and $51,570 per day per violation for all violations that occurred after November 2, 2015.

In addition to civil penalties, CSPA will seek injunctive relief preventing further violations of the Act pursuant to Sections 505(a) and (d) (33 U.S.C. §1365(a) and (d)) and such other relief as permitted by law.  Lastly, Section 505(d) of the Act (33 U.S.C. § 1365(d)) permits prevailing parties to recover costs and fees, including attorneys' fees.

The Clean Water Act requires that sixty (60) days prior to the initiation of a citizen-enforcement action under Section 505(a) of the Act (33 U.S.C. § 1365(a)), a citizen enforcer must give notice of its intent to file suit.  Notice must be given to the alleged violator, the U.S. Environmental Protection Agency, and the Chief Administrative Officer of the water pollution control agency for the State in which the violations occur.  *See* 40 C.F.R. § 135.2.

As required by the Act, this letter provides statutory notice of the violations that have occurred, and continue to occur, at the Facility.  40 C.F.R. § 135.3(a).  At the expiration of sixty (60) days from the date of this letter, CSPA intends to file suit under Section 505(a) of the Act in federal court against SPRQ for violations of the Clean Water Act and the Permit.

I.      Background.

        A.      California Sportfishing Protection Alliance

CSPA is a non-profit association dedicated to the preservation, protection and defense of the environment, wildlife and natural resources of California waters, including the waters into which SPRQ discharges polluted storm water.  Members of CSPA enjoy the waters that the Facility discharges into, including Washoe Creek, Laguna de Santa Rosa, Santa Rosa Creek, Mark West Creek and the Russian River.  Members of CSPA use and enjoy these waters for fishing, estuarine habitat and the rare, threatened and endangered species it supports, the wildlife habitat, marine habitat, and other designated beneficial uses.  The discharge of pollutants from the Facility impairs each of these uses.  Further, discharges of polluted storm water from the Facility are ongoing and continuous.  Thus, the interests of CSPA's members have been, are being, and will continue to be adversely affected by SPRQ's failure to comply with the Clean Water Act and the General Permit.

        B.      The Clean Water Act.

Congress enacted the CWA in 1972 in order to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251.  The Act prohibits



Notice of Violation and Intent To File Suit
November 14, 2017
Page 3

the discharge of pollutants into United States waters except as authorized by the statute. 33
U.S.C. § 1311; *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1156 (9th Cir.
2002). The Act is administered largely through the NPDES permit program. 33 U.S.C. § 1342.
In 1987, the Act was amended to establish a framework for regulating storm water discharges
through the NPDES system. Water Quality Act of 1987, Pub. L. 100-4, § 405, 101 Stat. 7, 69
(1987) (codified at 33 U.S.C. § 1342(p)); *see also Envtl. Def. Ctr., Inc. v. EPA*, 344 F.3d 832,
840-41 (9th Cir. 2003) (describing the problem of storm water runoff and summarizing the Clean
Water Act's permitting scheme). The discharge of pollutants not specifically allowed by a
NPDES permit is illegal. *Ecological Rights Found. v. Pacific Lumber Co.*, 230 F.3d 1141, 1145
(9th Cir. 2000).

Much of the responsibility for administering the NPDES permitting system has been
delegated to the states. *See* 33 U.S.C. § 1342(b); *see also* Cal. Water Code § 13370 (expressing
California's intent to implement its own NPDES permit program). The CWA authorizes states
with approved NPDES permit programs to regulate industrial storm water discharges through
individual permits issued to dischargers and/or through the issuance of a single, statewide
general permit applicable to all industrial storm water dischargers. 33 U.S.C. § 1342(b).
Pursuant to Section 402 of the Act, the Administrator of EPA has authorized California's State
Board to issue individual and general NPDES permits in California. 33 U.S.C. § 1342

### C.     California's General Permit for Storm Water Discharges Associated with Industrial Activities

Between 1997 and June 30, 2015, the General Permit in effect was Order No. 97-03-
DWQ, which CSPA refers to as the "1997 General Permit." On July 1, 2015, pursuant to Order
No. 2015-0057-DWQ the General Permit was reissued, including many of the same fundamental
terms as the prior permit. For purposes of this notice letter, CSPA refers to the reissued permit
as the "2015 General Permit." Accordingly, SPRQ is liable for violations of the 1997 General
Permit and ongoing violations of the 2015 General Permit, and civil penalties and injunctive
relief are available remedies. *See Illinois v. Outboard Marine, Inc.*, 680 F.2d 473, 480-81 (7th
Cir. 1982) (relief granted for violations of an expire permit); *Sierra Club v. Aluminum Co. of
Am.*, 585 F. Supp. 842, 853-54 (N.D.N.Y. 1984) (holding that the Clean Water Act's legislative
intent and public policy favor allowing penalties for violations of an expired permit); *Pub.
Interest Research Group of N.J. v. Carter-Wallace, Inc.*, 684 F. Supp. 115, 121-22 (D.N.J. 1988)
("Limitations of an expired permit, when those limitations have been transferred unchanged to
the newly issued permit, may be viewed as currently in effect").

Facilities discharging, or having the potential to discharge, storm water associated with
industrial activities that have not obtained an individual NPDES permit must apply for coverage
under the General Permit by filing a Notice of Intent to Comply ("NOI"). 1997 General Permit,
Provision E.1; 2015 General Permit, Standard Condition XXI.A. Facilities must file their NOIs
before the initiation of industrial operations. *Id.*

Facilities must strictly comply with all of the terms and conditions of the General Permit.
A violation of the General Permit is a violation of the CWA.

The General Permit contains three primary and interrelated categories of requirements:
(1) discharge prohibitions, receiving water limitations and effluent limitations; (2) Storm Water



Notice of Violation and Intent To File Suit
November 14, 2017
Page 4

Pollution Prevention Plan ("SWPPP") requirements; and (3) self-monitoring and reporting requirements.

### D.    SPRQ's Cotati Facility

Information available to CSPA indicates that SPRQ's industrial activities at the approximately 80-acre Facility include, but are not limited to: aggregate and rock material crushing, processing, stockpiling and recycling (concrete, tile, porcelain and asphalt shingles); and a landscape materials yard. The Facility also includes an approximately 17-acre rock quarry as well as a shop, equipment fluids storage areas, and a network of dirt roads that provide connectivity between the various industrial areas. The industrial activities at the Facility fall under Standard Industrial Classification ("SIC") Code 1442 ("Construction Sand and Gravel").

SPRQ collects and discharges storm water associated with industrial activities at the Facility through at least five (5) discharge points into Washoe Creek, which drains to Laguna de Santa Rosa, then to Santa Rosa Creek and then to Mark West Creek, before joining the Russian River. Washoe Creek, Laguna de Santa Rosa, Santa Rosa Creek, Mark West Creek and the Russian River are waters of the United States within the meaning of the Clean Water Act.

According to the 2012 303(d) List of Impaired Water Bodies, Russian River Hydrologic Unit, Middle Russian River Hydrologic Area downstream of the Facility is impaired for: Indicator Bacteria, Nitrogen, Dissolved Oxygen, Sediment/Siltation, and Temperature.[2] Polluted discharges from industrial sites, such as the Facility, contribute to the degradation of these already impaired surface waters and aquatic-dependent wildlife.

The areas of industrial activity at the Facility are sources of pollutants. The General Permit requires SPRQ to analyze storm water samples for TSS, pH, and Oil and Grease. 1997 General Permit, Section B.5.c.i; 2015 General Permit, Section XI.B.6. Facilities under SIC Code 1442 must also analyze storm water samples for Nitrate plus Nitrite Nitrogen ("N+N"). 1997 General Permit, Tables 1-2; 2015 General Permit Tables 1-2.

### II.    SPRQ's Violations of the Act and Permit.

Based on its review of available public documents, CSPA is informed and believes that SPRQ is in ongoing violation of both the substantive and procedural requirements of the CWA and the General Permit. These violations are ongoing and continuous. Consistent with the five-year statute of limitations applicable to citizen enforcement actions brought pursuant to the federal Clean Water Act, SPRQ is subject to penalties for violations of the Act since November 14, 2012.

---

[2] 2012 Integrated Report – All Assessed Waters, *available at* http://www.waterboards.ca.gov/water_issues/programs/tmdl/integrated2012.shtml (last accessed November 13, 2017).



Notice of Violation and Intent To File Suit
November 14, 2017
Page 5

### A.    SPRQ Discharges Storm Water Containing Pollutants in Violation of the General Permit's Discharge Prohibitions, Receiving Water Limitations and Effluent Limitations.

SPRQ's storm water sampling results provide conclusive evidence of SPRQ's failure to comply with the General Permit's discharge prohibitions, receiving water limitations and effluent limitations. Self-monitoring reports under the Permit are deemed "conclusive evidence of an exceedance of a permit limitation." *Sierra Club v. Union Oil*, 813 F.2d 1480, 1493 (9th Cir. 1988).

### 1.    Applicable Water Quality Standards.

The General Permit requires that storm water discharges and authorized non-storm water discharges shall not cause or threaten to cause pollution, contamination, or nuisance. 1997 General Permit, Discharge Prohibition A.2; 2015 General Permit, Discharge Prohibition III.C. The General Permit also prohibits discharges that violate any discharge prohibition contained in the applicable Regional Water Board's Basin Plan or statewide water quality control plans and policies. 1997 General Permit, Receiving Water Limitation C.2; 2015 General Permit, Discharge Prohibition III.D. Furthermore, storm water discharges and authorized non-storm water discharges shall not adversely impact human health or the environment, and shall not cause or contribute to a violation of any water quality standards in any affected receiving water. 1997 General Permit, Receiving Water Limitations C.1, C.2; 2015 General Permit, Receiving Water Limitations VI.A, VI.B.

Dischargers are also required to prepare and submit documentation to the Regional Board upon determination that storm water discharges are in violation of the General Permit's Receiving Water Limitations. 1997 General Permit, p. VII; 2015 General Permit, Special Condition XX.B. The documentation must describe changes the discharger will make to its current storm water best management practices ("BMPs") in order to prevent or reduce any pollutant in its storm water discharges that is causing or contributing to an exceedance of water quality standards. *Id.*

The *Water Quality Control Plan for the North Coast Region (Revised May 2011)* ("Basin Plan") sets forth water quality standards and prohibitions applicable to SPRQ's storm water discharges. The Basin Plan identifies present and potential beneficial uses for the Russian River Hydrologic Unit, which include municipal and domestic water supply, hydropower generation, agricultural supply, industrial service supply, navigation, wildlife habitat, warm freshwater habitat, cold freshwater habitat, warm and cold spawning, and contact and non-contact water recreation.

### 2.    Applicable Effluent Limitations.

Dischargers are required to reduce or prevent pollutants in their storm water discharges through implementation of best available technology economically achievable ("BAT") for toxic

Notice of Violation and Intent To File Suit
November 14, 2017
Page 6

and nonconventional pollutants and best conventional pollutant control technology ("BCT") for conventional pollutants. 1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A. Conventional pollutants include Total Suspended Solids, Oil & Grease, pH, Biochemical Oxygen Demand and Fecal Coliform. 40 C.F.R. § 401.16. All other pollutants are either toxic or nonconventional. 40 C.F.R. §§ 401.15-16.

Under the General Permit, benchmark levels established by the EPA ("EPA benchmarks") serve as guidelines for determining whether a facility discharging industrial storm water has implemented the requisite BAT and BCT. *Santa Monica Baykeeper v. Kramer Metals*, 619 F. Supp. 2d 914, 920, 923 (C.D. Cal 2009); 1997 General Permit, Effluent Limitations B.5-6; 2015 General Permit, Exceedance Response Action XII.A.

The following EPA benchmarks have been established for pollutants discharged by SPRQ: Total Suspended Solids – 100 mg/L; Oil & Grease – 15.0 mg/L; pH – 6.0-9.0 s.u. and Nitrate plus Nitrite Nitrogen – 0.68 mg/L.

3.    **SPRQ's Storm Water Sample Results**

The following discharges of pollutants from the Facility have violated the discharge prohibitions, receiving water limitations and effluent limitations of the Permit:

a.    **Discharge of Storm Water Containing Total Suspended Solids (TSS) at Concentrations in Excess of Applicable EPA Benchmark Value**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|------|-----------------|-----------|-----------------------------------|----------------------------|
| 4/7/2017 | CSP #1 | TSS | 120 | 100 |
| 4/7/2017 | CSP #3 | TSS | 210 | 100 |
| 4/7/2017 | CSP #4 | TSS | 150 | 100 |
| 3/21/2017 | CSP #5 | TSS | 130 | 100 |
| 2/17/2017 | CSP #3 | TSS | 120 | 100 |
| 2/16/2017 | CSP #5 | TSS | 120 | 100 |
| 1/18/2017 | CSP #1 | TSS | 550 | 100 |
| 1/18/2017 | CSP #2 | TSS | 110 | 100 |
| 1/18/2017 | CSP #3 | TSS | 270 | 100 |
| 1/18/2017 | CSP #4 | TSS | 210 | 100 |
| 1/18/2017 | CSP #5 | TSS | 200 | 100 |
| 10/25/2016 | CSP #3 | TSS | 200 | 100 |
| 10/25/2016 | CSP #4 | TSS | 160 | 100 |
| 10/25/2016 | CSP #5 | TSS | 120 | 100 |
| 1/29/2016 | CSP #3 | TSS | 150 | 100 |
| 1/29/2016 | CSP #4 | TSS | 180 | 100 |

Notice of Violation and Intent To File Suit
November 14, 2017
Page 7

| | | | | |
|---|---|---|---|---|
| 1/29/2016 | CSP #5 | TSS | 120 | 100 |
| 1/5/16 | CSP #3 | TSS | 360 | 100 |
| 1/5/16 | CSP #5 | TSS | 140 | 100 |
| 12/10/2015 | CSP #2 | TSS | 1200 | 100 |
| 12/10/2015 | CSP #3 | TSS | 140 | 100 |
| 12/10/2015 | CSP #4 | TSS | 330 | 100 |

        **b.**      **Discharge of Storm Water Containing Nitrate plus Nitrite Nitrogen (N+N) at Concentrations in Excess of Applicable EPA Benchmark Values**

| Date | Discharge Point | Parameter | Concentration in Discharge (mg/L) | EPA Benchmark Value (mg/L) |
|---|---|---|---|---|
| 4/7/2017 | CSP #3 | N+N | 0.72 | 0.68 |
| 4/7/2017 | CSP #5 | N+N | 3.7 | 0.68 |
| 3/21/2017 | CSP #3 | N+N | 1.2 | 0.68 |
| 3/21/2017 | CSP #5 | N+N | 3.6 | 0.68 |
| 2/17/2017 | CSP #3 | N+N | 1.4 | 0.68 |
| 2/16/2017 | CSP #5 | N+N | 2.6 | 0.68 |
| 2/6/2017 | CSP #1 | N+N | 0.98 | 0.68 |
| 2/6/2017 | CSP #2 | N+N | 0.71 | 0.68 |
| 2/6/2017 | CSP #5 | N+N | 1.6 | 0.68 |
| 1/18/2017 | CSP #2 | N+N | 0.83 | 0.68 |
| 1/18/2017 | CSP #5 | N+N | 3 | 0.68 |
| 12/23/2016 | CSP #5 | N+N | 3.8 | 0.68 |
| 12/8/2016 | CSP #3 | N+N | 2.9 | 0.68 |
| 12/8/2016 | CSP #5 | N+N | 2.9 | 0.68 |
| 11/23/2016 | CSP #2 | N+N | 0.92 | 0.68 |
| 11/23/2016 | CSP #5 | N+N | 2.8 | 0.68 |
| 10/25/2016 | CSP #1 | N+N | 1 | 0.68 |
| 10/25/2016 | CSP #2 | N+N | 1.2 | 0.68 |
| 10/25/2016 | CSP #3 | N+N | 1.8 | 0.68 |
| 10/25/2016 | CSP #5 | N+N | 2.1 | 0.68 |
| 2/18/16 | CSP #5 | N+N | 3.6 | 0.68 |
| 1/29/2016 | CSP #2 | N+N | 0.8 | 0.68 |
| 1/5/16 | CSP #1 | N+N | 3.9 | 0.68 |
| 1/5/16 | CSP #2 | N+N | 1.2 | 0.68 |
| 1/5/16 | CSP #4 | N+N | 0.8 | 0.68 |
| 12/21/2015 | CSP #1 | N+N | 2 | 0.68 |
| 12/21/2015 | CSP #2 | N+N | 4.4 | 0.68 |
| 12/21/2015 | CSP #4 | N+N | 0.69 | 0.68 |



Notice of Violation and Intent To File Suit
November 14, 2017
Page 8

| 12/21/2015 | CSP #5 | N+N | 3.8 | 0.68 |
|---|---|---|---|---|
| 12/10/2015 | CSP #2 | N+N | 2.2 | 0.68 |
| 12/10/2015 | CSP #6 | N+N | 1.6 | 0.68 |

     c.    **Discharge of Storm Water with a pH Outside EPA Benchmark and CTR Values**

| Date | Discharge Point | Parameter | Sample Result (s.u.) | EPA Benchmark Value (s.u.) | CTR Criteria (s.u.) |
|---|---|---|---|---|---|
| 3/21/2017 | CSP #3 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 3/21/2017 | CSP #4 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 3/21/2017 | CSP #5 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 3/21/2017 | CSP #6 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/17/2017 | CSP #3 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/17/2017 | CSP #4 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/17/2017 | CSP #6 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/6/2017 | CSP #3 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/6/2017 | CSP #4 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 2/6/2017 | CSP #6 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #1 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #2 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #3 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #4 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #5 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 1/18/2017 | CSP #6 | pH | 5.5 | 6.0 – 9.0 | 6.5 – 9.0 |
| 12/23/2016 | CSP #1 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 12/23/2016 | CSP #2 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 12/23/2016 | CSP #5 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 12/8/2016 | CSP #1 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 12/8/2016 | CSP #5 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |
| 11/23/2016 | CSP #2 | pH | 6 | 6.0 – 9.0 | 6.5 – 9.0 |

     d.    **SPRQ 's Sample Results Are Evidence of Violations of the General Permit**

SPRQ's sample results demonstrate violations of the Permit's discharge prohibitions, receiving water limitations and effluent limitations set forth above. CSPA is informed and believes that SPRQ has known that its storm water contains pollutants at levels exceeding General Permit standards since at least November 14, 2012.



Notice of Violation and Intent To File Suit
November 14, 2017
Page 9

CSPA alleges that such violations occur each time storm water discharges from the Facility. Attachment A hereto, sets forth the specific rain dates on which CSPA alleges that SPRQ has discharged storm water containing impermissible levels of TSS, O&G, pH, and N+N in violation of the General Permit. 1997 General Permit, Discharge Prohibition A.2, Receiving Water Limitations C.1 and C.2; 2015 General Permit, Discharge Prohibitions III.C and III.D, Receiving Water Limitations VI.A, VI.B.

### 4.   SPRQ Has Failed to Implement BAT and BCT

Dischargers must implement BMPs that fulfill the BAT/BCT requirements of the CWA and the General Permit to reduce or prevent discharges of pollutants in their storm water discharges. 1997 General Permit, Effluent Limitation B.3; 2015 General Permit, Effluent Limitation V.A. To meet the BAT/BCT standard, dischargers must implement minimum BMPs and any advanced BMPs set forth in the General Permit's SWPPP Requirements provisions where necessary to reduce or prevent pollutants in discharges. *See* 1997 General Permit, Sections A.8.a-b; 2015 General Permit, Sections X.H.1-2.

SPRQ has failed to implement the minimum BMPs required by the General Permit, including: good housekeeping requirements; preventive maintenance requirements; spill and leak prevention and response requirements; material handling and waste management requirements; erosion and sediment controls; employee training and quality assurance; and record keeping. Permit, Section X.H.1(a-g).

SPRQ has further failed to implement advanced BMPs necessary to reduce or prevent discharges of pollutants in its storm water sufficient to meet the BAT/BCT standards, including: exposure minimization BMPs; containment and discharge reduction BMPs; treatment control BMPs; or other advanced BMPs necessary to comply with the General Permit's effluent limitations. 1997 General Permit, Section A.8.b; 2015 General Permit, Sections X.H.2.

Each day that SPRQ have failed to develop and implement BAT and BCT at the Facility in violation of the General Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a). SPRQ have been in violation of the BAT and BCT requirements at the Facility every day since at least November 14, 2012.

### 5.   SPRQ Has Failed to Implement an Adequate Monitoring Implementation Plan.

The General Permit requires dischargers to implement a Monitoring Implementation Plan. Permit, Section X.I. As part of their monitoring plan, dischargers must identify all storm water discharge locations. Permit, Section X.I.2. Dischargers must then conduct monthly visual observations of each drainage area, as well as visual observations during discharge sampling events. General Permit, Section XI.A.1 and 2.

Dischargers must collect and analyze storm water samples from two (2) storm events within the first half of each reporting year (July 1 to December 31) and two (2) storm events



Notice of Violation and Intent To File Suit
November 14, 2017
Page 10

during the second half of each reporting year (January 1 to June 3). General Permit, Section XI.B. Section XI.B requires dischargers to sample and analyze during the wet season for basic parameters such as pH, total suspended solids ("TSS") and oil and grease ("O&G"), certain industry-specific parameters set forth in Table 2 of the General Permit, and other pollutants likely to be in the storm water discharged from the facility based on the pollutant source assessment. Permit, Section XI.B.6. Dischargers must submit all sampling and analytical results via SMARTS within thirty (30) days of obtaining all results for each sampling event. Section XI.B.11.

SPRQ has failed to develop and implement an adequate Monitoring Implementation Plan. Each day that SPRQ has failed to develop and implement an adequate Monitoring Implementation Plan is a separate and distinct violation of the Act and Permit. SPRQ has been in violation of the Monitoring Implementation Plan requirements every day since at least November 14, 2012.

> 6.     **SPRQ Has Failed to Develop and Implement an Adequate Storm Water Pollution Prevention Plan.**

The General Permit requires dischargers to develop and implement a site-specific SWPPP. 1997 General Permit, Section A.1; 2015 General Permit, Section X.A. The SWPPP must include, among other elements: (1) the facility name and contact information; (2) a site map; (3) a list of industrial materials; (4) a description of potential pollution sources; (5) an assessment of potential pollutant sources; (6) minimum BMPs; (7) advanced BMPs, if applicable; (8) a monitoring implementation plan; (9) annual comprehensive facility compliance evaluation; and (10) the date that the SWPPP was initially prepared and the date of each SWPPP amendment, if applicable. *See id.*

Dischargers must revise their SWPPP whenever necessary and certify and submit via the Regional Board's Storm Water Multiple Application and Report Tracking System ("SMARTS") their SWPPP within 30 days whenever the SWPPP contains significant revisions(s); and, certify and submit via SMARTS for any non-significant revisions not more than once every three (3) months in the reporting year. 2015 General Permit, Section X.B; see also 1997 General permit, Section A.

CSPA's investigation indicates that SPRQ has been operating with an inadequately developed or implemented SWPPP in violation of General Permit requirements. SPRQ has failed to evaluate the effectiveness of its BMPs and to revise its SWPPP as necessary, resulting in the Facility's numerous effluent limitation violations.

Each day SPRQ failed to develop and implement an adequate SWPPP is a violation of the General Permit. The SWPPP violations described above were at all times in violation of Section A of the 1997 General Permit, and Section X of the 2015 General Permit. SPRQ has been in violation of these requirements at the Facility every day since at least November 14, 2012.



Notice of Violation and Intent To File Suit
November 14, 2017
Page 11

### 6.    SPRQ Has Failed to File Timely, True and Correct Reports.

Section XVI. of the Permit requires dischargers to submit an Annual Report by July 15th of each reporting year to the Regional Board. The Annual Report must be signed and certified by a discharger's Legally Responsible Person, or Duly Authorized Representative. Permit, Sections XVI.A, XXI.K. The Annual Report must include a compliance checklist, certifying compliance with the General Permit and an explanation of any non-compliance. Permit, Section XVI.B.

CSPA's investigations indicate that SPRQ has submitted incomplete Annual Reports and purported to comply with the Permit despite significant noncompliance at the Facility.

### III.    Persons Responsible for the Violations.

CSPA puts SPRQ on notice that they are the persons and entities responsible for the violations described above. If additional persons are subsequently identified as also being responsible for the violations set forth above, CSPA puts SPRQ on formal notice that it intends to include those persons in this action.

### IV.    Name and Address of Noticing Parties.

The name, address and telephone number of each of the noticing parties is as follows:

Bill Jennings, Executive Director
California Sportfishing Protection Alliance
3536 Rainer Avenue
Stockton, CA 95204
(209) 464-5067

### V.    Counsel.

CSPA has retained legal counsel to represent it in this matter. Please direct all communications to:

Andrew L. Packard
William N. Carlon
Law Offices Of Andrew L. Packard
245 Kentucky Street, Suite B3
Petaluma, CA 94952
(707) 782-4060
andrew@packardlawoffices.com

### VI.    Conclusion

Notice of Violation and Intent To File Suit
November 14, 2017
Page 12

      CSPA believes this Notice of Violations and Intent to File Suit sufficiently states grounds for filing suit. We intend to file a citizen suit under Section 505(a) of the CWA against SPRQ and their agents for the above-referenced violations upon the expiration of the 60-day notice period. If you wish to pursue remedies in the absence of litigation, we suggest that you initiate those discussions within the next 20 days so that they may be completed before the end of the 60-day notice period. We do not intend to delay the filing of a complaint in federal court if discussions are continuing when that period ends.

Sincerely,

Andrew L. Packard
Law Offices of Andrew L. Packard
Counsel for CALIFORNIA SPORTFISHING
PROTECTION ALLIANCE

Notice of Violation and Intent To File Suit
November 14, 2017
Page 13

## SERVICE LIST

### VIA CERTIFIED MAIL

Scott Pruitt, Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Alexis Strauss, Acting Regional Administrator
U.S. Environmental Protection Agency, Region IX
75 Hawthorne Street
San Francisco, CA 94105

Jeff Sessions, U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530-0001

Eileen Sobeck, Executive Director
State Water Resources Control Board
P.O. Box 100
Sacramento, CA 95812

Matthias St. John, Executive Officer
North Coast Regional Water Quality Control Board
5550 Skylane Boulevard Suite A
Santa Rosa, CA 95403

**ATTACHMENT A**
**Notice of Intent to File Suit, SPRQ**
**Significant Rain Events,* November 14, 2012 – November 14, 2017**

| | | | |
|---|---|---|---|
| November 16, 2012 | April 8, 2013 | April 27, 2014 | April 6, 2015 |
| November 17, 2012 | May 28, 2013 | July 22, 2014 | April 25, 2015 |
| November 18, 2012 | June 10, 2013 | August 5, 2014 | May 14, 2015 |
| November 20, 2012 | June 25, 2013 | September 18, 2014 | June 1, 2015 |
| November 21, 2012 | June 26, 2013 | September 25, 2014 | June 10, 2015 |
| November 28, 2012 | September 21, 2013 | September 27, 2014 | July 9, 2015 |
| November 29, 2012 | September 22, 2013 | October 20, 2014 | July 10, 2015 |
| November 30, 2012 | September 30, 2013 | October 25, 2014 | September 16, 2015 |
| December 1, 2012 | October 1, 2013 | October 26, 2014 | October 28, 2015 |
| December 2, 2012 | November 18, 2013 | October 31, 2014 | November 2, 2015 |
| December 3, 2012 | November 19, 2013 | November 13, 2014 | November 8, 2015 |
| December 5, 2012 | December 7, 2013 | November 19, 2014 | November 9, 2015 |
| December 6, 2012 | January 11, 2014 | November 20, 2014 | November 15, 2015 |
| December 12, 2012 | January 29, 2014 | November 21, 2014 | November 24, 2015 |
| December 13, 2012 | January 30, 2014 | November 22, 2014 | December 3, 2015 |
| December 16, 2012 | February 2, 2014 | November 28, 2014 | December 5, 2015 |
| December 17, 2012 | February 6, 2014 | November 29, 2014 | December 9, 2015 |
| December 18, 2012 | February 7, 2014 | December 1, 2014 | December 10, 2015 |
| December 21, 2012 | February 8, 2014 | December 2, 2014 | December 12, 2015 |
| December 22, 2012 | February 9, 2014 | December 3, 2014 | December 13, 2015 |
| December 23, 2012 | February 10, 2014 | December 4, 2014 | December 20, 2015 |
| December 24, 2012 | February 14, 2014 | December 5, 2014 | December 21, 2015 |
| December 25, 2012 | February 16, 2014 | December 6, 2014 | December 22, 2015 |
| December 26, 2012 | February 26, 2014 | December 8, 2014 | December 24, 2015 |
| December 29, 2012 | February 27, 2014 | December 11, 2014 | December 28, 2015 |
| January 6, 2013 | February 28, 2014 | December 12, 2014 | January 3, 2016 |
| January 24, 2013 | March 1, 2014 | December 13, 2014 | January 4, 2016 |
| February 7, 2013 | March 2, 2014 | December 15, 2014 | January 5, 2016 |
| February 8, 2013 | March 3, 2014 | December 16, 2014 | January 6, 2016 |
| February 19, 2013 | March 6, 2014 | December 17, 2014 | January 7, 2016 |
| February 20, 2013 | March 10, 2014 | December 18, 2014 | January 9, 2016 |
| March 6, 2013 | March 25, 2014 | December 19, 2014 | January 10, 2016 |
| March 7, 2013 | March 26, 2014 | December 21, 2014 | January 12, 2016 |
| March 20, 2013 | March 27, 2014 | December 24, 2014 | January 13, 2016 |
| March 21, 2013 | March 29, 2014 | January 16, 2015 | January 16, 2016 |
| March 31, 2013 | March 31, 2014 | February 6, 2015 | January 17, 2016 |
| April 1, 2013 | April 1, 2014 | February 7, 2015 | January 18, 2016 |
| April 2, 2013 | April 2, 2014 | February 8, 2015 | January 19, 2016 |
| April 4, 2013 | April 4, 2014 | February 9, 2015 | January 20, 2016 |
| April 5, 2013 | April 25, 2014 | March 11, 2015 | January 22, 2016 |
| April 6, 2013 | April 26, 2014 | March 23, 2015 | January 23, 2016 |

\* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.



**ATTACHMENT A**
**Notice of Intent to File Suit, SPRO**
**Significant Rain Events,\* November 14, 2012 – November 14, 2017**

| | | |
|---|---|---|
| January 29, 2016 | November 15, 2016 | February 19, 2017 |
| February 1, 2016 | November 19, 2016 | February 20, 2017 |
| February 2, 2016 | November 20, 2016 | February 21, 2017 |
| February 17, 2016 | November 23, 2016 | March 4, 2017 |
| February 18, 2016 | November 25, 2016 | March 5, 2017 |
| February 19, 2016 | November 27, 2016 | March 6, 2017 |
| February 27, 2016 | December 8, 2016 | March 20, 2017 |
| March 3, 2016 | December 9, 2016 | March 21, 2017 |
| March 4, 2016 | December 10, 2016 | March 22, 2017 |
| March 5, 2016 | December 11, 2016 | March 24, 2017 |
| March 6, 2016 | December 14, 2016 | March 27, 2017 |
| March 7, 2016 | December 15, 2016 | April 6, 2017 |
| March 9, 2016 | December 23, 2016 | April 7, 2017 |
| March 10, 2016 | January 2, 2017 | April 8, 2017 |
| March 11, 2016 | January 3, 2017 | April 12, 2017 |
| March 12, 2016 | January 4, 2017 | April 13, 2017 |
| March 13, 2016 | January 5, 2017 | April 16, 2017 |
| March 14, 2016 | January 7, 2017 | April 17, 2017 |
| March 20, 2016 | January 8, 2017 | April 18, 2017 |
| March 21, 2016 | January 9, 2017 | April 20, 2017 |
| April 9, 2016 | January 10, 2017 | April 26, 2017 |
| April 10, 2016 | January 11, 2017 | June 8, 2017 |
| April 15, 2016 | January 12, 2017 | June 12, 2017 |
| April 22, 2016 | January 18, 2017 | September 7, 2017 |
| April 23, 2016 | January 19, 2017 | |
| April 27, 2016 | January 20, 2017 | |
| May 5, 2016 | January 21, 2017 | |
| May 7, 2016 | January 22, 2017 | |
| May 8, 2016 | January 23, 2017 | |
| October 3, 2016 | January 24, 2017 | |
| October 14, 2016 | February 2, 2017 | |
| October 15, 2016 | February 3, 2017 | |
| October 16, 2016 | February 4, 2017 | |
| October 24, 2016 | February 6, 2017 | |
| October 25, 2016 | February 7, 2017 | |
| October 27, 2016 | February 8, 2017 | |
| October 28, 2016 | February 9, 2017 | |
| October 29, 2016 | February 10, 2017 | |
| October 30, 2016 | February 16, 2017 | |
| October 31, 2016 | February 17, 2017 | |
| November 1, 2016 | February 18, 2017 | |

\* Dates gathered from publicly available rain and weather data collected at stations located near the Facility.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C – BMP Detail Drawings**



1-800-515-5054 · www.lacoassociates.com

EUREKA · UKIAH · SANTA ROSA

LACO

STONY POINT ROCK QUARRY

SOILAND CO. INC
7171 STONY POINT ROAD, COTATI, CA

BMP DETAILS

DRAWN
CHECK
APPROVED
DATE    10/1/2018
JOB NUMBER    7414.02
SHEET    1

DRAFT



FACE OF CHECK DAM

VARIES
~1' MIN

2" - 4" ROCK

50' MAX

L=THE DISTANCE SUCH THAT
POINTS A AND B ARE
OF EQUAL ELEVATION

4" to 8" MIN
SPACING BETWEEN CHECK DAMS

**CHECK DAM**    N.T.S.

( 2 )





4"-6" clean angular drain rock

Riblay soils

**ROCK-LINED DRAINAGE SWALE**    N.T.S.

( 1 )

## EXHIBIT D

| Parameter | Annual NAL[2] | Instantaneous NAL |
|---|---|---|
| pH (Field test) | N/A | 6.0 – 9.0 s.u. |
| Total Suspended Solids | 100 mg/L | 400 mg/L |
| Oil & Grease | 15 mg/L | 25 mg/L |
| Iron | 1.0 mg/L | |
| Copper* | 0.0332 mg/L | |
| Zinc* | 0.262 mg/L | |
| Nitrate plus Nitrite Nitrogen | 0.68 mg/L | |

*This parameter will be tested at CSP#1 and CSP #2 and may be eliminated from the sampling required under this Agreement as follows.  In the event that four consecutive samples, taken in accordance with the requirements of Sections 4 and 5 of this Agreement, at a given discharge point are "non-detects" for the parameter at issue, sampling for that parameter at that Discharge Point may be discontinued.

[2] General Permit, Table 2, at 43.

SETTLEMENT AGREEMENT